JOE AND AL'S IGA, INC., APPELLEE, V. NEBRASKA
LIQUOR CONTROL COMMISSION ET AL., APPELLANTS,
AND CHARLES H. ROGERS ET AL., INTERVENOR-APPELLANTS.

277 N. W. 2d 693

Filed April 24, 1979. No. 42138.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellants.

Edward F. Carter, Jr., of Barney & Carter, P.C., for intervenor-appellants.

Mark M. Sipple of Walker, Luckey, Sipple & Hansen, for appellee.

Heard before BOSLAUGH, CLINTON, BRODKEY, and HASTINGS, JJ., and HICKMAN, District Judge.

HASTINGS, J.

This is an appeal from an order of the District Court setting aside the order of the Nebraska Liquor Control Commission denying the application of plain-

tiff-appellee for a retail package liquor license, and in such order of reversal the District Court ordered the Commission to issue such license. The appellants are the Commission and certain protestors at the original Commission hearing who joined as intervenors in the District Court.

Plaintiff is, as the name implies, an IGA grocery store operating as a corporation which has been doing business at 23rd Street and U. S. Highway No. 30 in Columbus since April of 1967. The corporation consists of two equal stockholders, Joe Gdowski and Alfred Dolezal, both Columbus residents. All parties concede they are proper persons to hold a license under the Nebraska Liquor Control Act.

The application was filed on August 15, 1977, and, as required by statute, was first referred to the Columbus city council for recommendations. On September 7, 1977, a motion was made by that body to recommend the granting of the license, which motion was defeated with three councilmen voting in the affirmative and four in the negative. One councilman was absent. A report of this action was forwarded to the Commission. Also contained in the Commission's file were written protests of seven citizens of Columbus plus the written protest of an agent for the Commission. The protests generally related to what they considered to be an overabundance of licenses in Columbus, and that it would not be in the public interest to sell alcoholic beverages in a grocery store or to grant this particular license. According to the Commission itself, the only reason for the agent's protest was a formality because of the citizen protests.

A formal hearing was had before the Commission on October 18, 1977. The two stockholders for the plaintiff testified that they operated a full-line meat and grocery business; that they had a good clientele, "business people and everything;" that residential structures bordered their place of business to the

south, but the remainder of the area was devoted to business places. One of the witnesses described the present building and explained that they were planning a 60 foot by 60 foot addition to one end which would house the liquor section and a proposed bakery section. This proposed construction differed from the plan submitted at the time of the original application which called for a somewhat different addition which the landlord declined to consider. Petitions containing approximately 250 signatures of persons, mostly plaintiff's customers, favoring the issuance of the liquor license to the plaintiff, were identified by the witness Dolezal and received into evidence. He gave as reasons for wanting a liquor license the fact that many of his customers had asked why liquor was not available in the store, and that it would give the plaintiff another source of income so as to permit it to be more competitively priced in grocery items with its major competition, three large grocery store chains.

The evidence related that there was one other grocery store possessing a liquor license, technically not within the city limits of Columbus because it was a part of an industrial tract, but more or less surrounded by a residential neighborhood within the city limits. However, two drugstores held package licenses. There were 58 liquor licenses held by grocery stores throughout the State of Nebraska during the year 1977. Without reference to whether they are retail package licenses or Class C licenses which permit sale by the drink, one of the protestants claimed that there are 50 alcoholic beverage outlets within the city of Columbus which has a population of 17,000. Eighteen liquor licenses are located in downtown Columbus, and on a portion of highway 30 approximately 2½ miles long where plaintiff's place of business is located there are 21 alcoholic beverage outlets. Within 3 blocks on either side of plaintiff's location there are presently four package liquor out-

lets. The license which plaintiff seeks is an existing Class C license presently held by a downtown Columbus bar which would be downgraded to the proposed package license.

Four other witnesses testified in favor of the granting of the license: Richard Gdowski, who is a real estate broker and a brother of Joe; an operator of a fast-food restaurant; a contractor who is also mayor of Columbus; and a manager of a local radio station. They gave no particular additional reasons for their support of the issuance of the license. Appearing at the hearing but not testifying were 7 protestants, all involved in the liquor business in Columbus, and 11 supporters of the application, 2 of whom were involved in the liquor business.

As previously indicated, the Commission denied the application, assigning as reasons that the city of Columbus made no recommendations; two separate citizen protests were filed; a protest was filed by an agent of the Commission; no other grocery stores in Columbus had a liquor license; the only grocery store with a liquor license is located outside the city limits; there are 42 licenses in Columbus (not 50 as claimed by one of the protestants), of which 38 possess package sale privileges; and there is no need for such a package liquor license. On appeal, the evidence introduced at the Commission hearing was received as well as evidence of the number of grocery stores in the state holding liquor licenses, and the District Court found that the Commission's order of denial was arbitrary and capricious and reversed the same and ordered the license to issue.

The respective motions for new trial filed by defendant and intervenors were overruled and their appeals were perfected. The errors assigned were that the District Court found the order of the Commission to be unreasonable, arbitrary, and capricious, and particularly in: (1) Finding that the Commission's sole basis for denial was that plaintiff was a

grocery store; (2) not finding that the order of the Commission was reasonable because the evidence lacked a showing of need for a license in the area; and (3) not finding that plaintiff would not operate, if granted a license, from the premises described in the application.

"The Nebraska Liquor Control Commission is vested with discretion in the granting or denial of retail liquor licenses, but it may not act arbitrarily or unreasonably. Its discretion is to be exercised reasonably and not whimsically nor capriciously. As in the case of other administrative bodies, the Nebraska Liquor Control Commission, after an administrative hearing, must base its findings and orders on a factual foundation in the record of the proceedings, and the record must show some valid basis on which a finding and order may be premised. Where the record of the proceedings contains no evidence to justify an order, the action must be held to be unreasonable and arbitrary." Hadlock v. Nebraska Liquor Control Commission, 193 Neb. 721, 228 N. W. 2d 887 (1975).

In order to judge whether the action of the Commission was arbitrary or unreasonable, it is necessary to examine each assigned reason for denying the application.

First, that the city of Columbus made no recommendation. In this case, the situation that existed was opposite that in Hadlock v. Nebraska Liquor Control Commission, *supra*. There, a motion was made before the Kearney city council to recommend denial of the license which received two affirmative votes, one negative vote, and one abstention; one councilman was absent. This court found that under the statutes and rules applicable to the city of Kearney a resolution, recommending either issuance or denial of a license, required for adoption a majority vote (3) of all elected members of the city council. The court stated that: "The vote here was clearly

ineffective to constitute any official action of the governing body." In this case, a resolution recommending approval failed to receive a majority vote; it was clearly ineffective to constitute any official action of the governing body; amounted to no recommendation at all; and does not furnish competent evidence upon which to base a denial of a liquor license application by the Commission.

The second reason for denying the application was that two separate citizen protests were filed. Admittedly, such protests afforded the basis of a mandatory hearing before the Commission. "(1) The commission shall set for hearing before it any application for a retail license relative to which it has received: * * * (b) * * * objections in writing by not less than three persons residing within said city, village, or county, as the case may be, protesting the issuance of the license * * *." § 53-133, R. S. Supp., 1978. However, upon such hearing, the protests to be effective must be of some substance. Here, stripped of form, they were all authored and signed by citizens involved in the liquor business, competitors if you will, who simply didn't want any competition. The claim that there were too many licenses in Columbus has a hollow ring to it because this was a replacement, not an addition. Also, neither the Legislature nor the Commission has ever established any definitive policy relating to population-license ratios such as was done by the city of Lincoln in its recommendation to the Commission and approved by this court in Allen v. Nebraska Liquor Control Commission, 179 Neb. 767, 140 N. W. 2d 413 (1966): "Upon the foregoing reasoning the court concluded: 'Such discretion (of the licensing board) extends to limiting the number of licenses which it will issue for the sale of liquors within the city, as well as the number that will be granted for any particular locality.' " However, the Commission did not in its findings embrace protestants' ratio theory

which was condemned in *J K & J, Inc. v. Nebraska Liquor Control Commission,* 194 Neb. 413, 231 N. W. 2d 694 (1975). "It seems clear that *if such a policy* [limiting licenses by population] *had been earlier determined and announced,* the burden would, under the doctrine of Allen v. Nebraska Liquor Control Commission, *supra,* have been upon the applicant to show that it was arbitrary and unreasonable." (Emphasis supplied.) There had been no such "earlier determination" in this case.

The next reason given by the Commission for its order related to the finding that no other grocery stores in Columbus have a license except one which was outside the city limits. All policy decisions aside, with the record showing 58 licenses possessed by grocery stores throughout the state, it is difficult to perceive the nature of plaintiff's present business as furnishing any basis for the license denial. This is especially true when one considers that except for the fact of some apparent gerrymandering there is a grocery so licensed in Columbus.

The final reason given by the Commission was that there are 38 package licenses in Columbus, therefore there was no need for this license. This is suggestive of a requirement that there be a showing of public convenience and necessity such as is necessary to obtain permits and licenses in the public utility and service area. Nowhere in the statutes relating to the liquor laws is there any such requirement. As stated in Hadlock v. Nebraska Liquor Control Commission, *supra*: "In an administrative hearing on an application for a retail liquor license not required by subsection (1) of section 53-133, R. R. S. 1943, where the evidence fails to establish any valid grounds for denial of the application, the provisions of section 53-132(1), R. R. S. 1943, require the Nebraska Liquor Control Commission to cause a license to be issued in the manner provided by law as a matter of course." Absence of need alone is not a

sufficient reason to deny an otherwise proper application for a liquor license.

Intervenors' last assignment of error states that the District Court failed to find the plaintiff, if granted the license, would not operate from the premises described in its application, contrary to the holding of this court in O'Connor v. Nebraska Liquor Control Commission, 191 Neb. 436, 215 N. W. 2d 635 (1974). However, that was a case involving a suspension of a licensee who had permitted gambling on the premises, stored liquor in a place other than indicated on his license, and who had failed to show a basement on the diagram of his original application upon which his license had been issued. This is a much different case. Plaintiff here was forced to change its building plans because of a refusal of the landlord to go along with the original plans. This fact was brought to the attention of the Commission as soon as it was known and presented as an amendment to the application at the time of the hearing. There is no claim of bad faith and certainly this is not the type of failure to "submit a truthful application" mentioned in O'Connor v. Nebraska Liquor Control Commission, *supra*.

From an examination of all the evidence there does not appear to be any valid reason for the Commission denying this application, and its action is therefore arbitrary and unreasonable. The judgment of the District Court was correct and is affirmed.

AFFIRMED.