BRIAN L. HALBERT, DOING BUSINESS AS BICO'S CAFE, APPELLANT, V. NEBRASKA LIQUOR CONTROL COMMISSION, APPELLEE.

294 N. W. 2d 864

Filed July 15, 1980. No. 42856.

Jacobsen, Orr & Nelson and Jerry N. Stehlik, for appellant.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.

The appellant, Brian L. Halbert, doing business as Bico's Cafe (Halbert), appeals from a judgment of the District Court for Buffalo County, Nebraska, affirming the denial of Halbert's application for a bottle club liquor license by the Nebraska Liquor Control Commission (Commission). Based upon the record in this case and the applicable law, we reverse the decision of the trial court and remand the matter with directions to issue the license.

The record reflects that Halbert has, since September 1, 1976, been the owner and operator of Bico's Cafe, located just west of the city limits of Kearney, Nebraska. During all of that time, Halbert held and operated under both an on-sale and off-sale beer license as prescribed by Neb. Rev. Stat. § 53-124(5)B and F (Reissue 1978) and issued by the Commission. Halbert's business consists of a dining area seating approximately 66 people with a combination game and party room of approximately 2,400 square feet connected to it. Halbert operates both his on-sale and off-sale beer business and his restau-

rant from Tuesday through Sunday of each week, being closed on Monday. While no off-sale beer sales are permitted within the city of Kearney on Sunday, Halbert is able to sell beer, both on-sale and off-sale, because he is located within the County of Buffalo but outside of the city limits of Kearney.

The record reflects that 77.7 percent of Halbert's beer sales were sold for off-premises consumption while 22.3 percent of his beer sales were sold for on-premises consumption. With regard to his Sunday operations, the record reflects that 91.9 percent of the beer sales were off-sales and 8.1 percent were on-sales. Halbert testified that 72.2 percent of his total beer sales were made on Sunday, whereas 27.8 percent of his beer sales were made during the remainder of the week in which he was open.

On June 5, 1978, Halbert filed with the Commission an application for a bottle club liquor license (Neb. Rev. Stat. § 53-124(9) (Reissue 1978)) which, if granted, would allow him to sell and serve beer, liquor, and wine for consumption on the premises in connection with his restaurant operation.

On June 29, 1978, a hearing was held before the county board of Buffalo County, Nebraska, and a resolution was passed by the county board recommending approval of Halbert's application. This resolution was then filed with the Commission on July 3, 1978. A form protest was filed by an agent for the Commission, dated July 14, 1978. The record reflects that, other than this protest, no other protests were filed by either the city of Kearney or any establishment doing business within the city of Kearney.

By letter dated August 1, 1978, the Commission advised Halbert that two issues would be considered at the hearing. The first issue was whether there was a need for an off-sale beer license, combined with a bottle club license, at Halbert's location, and, second, whether the combining of a bottle club li-

cense with an off-sale beer license defeated the purpose of the no off-sale provision of the bottle club law.

Thereafter, a hearing was held before the Commission with Halbert and his wife being the only witnesses in attendance. The Commission stipulated that Halbert was a good and well-qualified applicant to possess a liquor license at any time.

On August 30, 1978, following the hearing on August 23, 1978, the Commission denied the license. The basis for the denial was that the Commission felt that the combining of an off-sale beer license with a bottle club license defeated the purpose of a bottle club license having no off-sale privileges. Thereafter, Halbert perfected an appeal to the District Court for Buffalo County, Nebraska. At the hearing in the District Court, the transcript and bill of exceptions from the Commission hearing were offered in evidence. In addition, the parties offered in evidence a stipulation which provided that the records of the Commission indicated that there were currently issued to some nine other licensees in the State of Nebraska both a bottle club license and an off-premises beer license.

On December 28, 1978, the District Court remanded the matter back to the Commission for further hearing and determination, specifically on the question as to whether a policy of the Commission prohibiting a combination of off-sale beer and bottle club licenses applied as a continuing policy of the Commission or applied only to Halbert.

On January 17, 1979, Halbert received a letter from the Commission advising him that the issues to be considered at the second hearing would concern themselves with the basic question of whether a bottle club and an off-sale beer license should be combined. At the second hearing, held on January 24, 1979, Halbert was the only witness who testified. No one appeared in opposition at the hearing and no

evidence was offered by the Commission. At the second hearing, evidence was introduced to the effect that, in addition to Halbert's license authorizing off-sale beer on Sundays, there were at least two other licensees in the area offering off-sale beer, one being located approximately 4 miles south of Kearney and the other located approximately 6 miles west of Kearney.

On February 14, 1979, the Commission again denied Halbert's application for a bottle club license. This time, the Commission's order of denial cited 14 reasons for its decision, all of which, in essence, maintained that if the requested license was granted to Halbert, he would obtain a "competitive edge" on the sale of beer over the other licensees located within the city of Kearney because of his ability to sell on Sunday. The order further provided that the Commission was generally disposed to promote equality of competition when possible, and because the Commission did not have control over whether beer would be sold within the city limits of Kearney on Sunday, to grant the requested application would be to further increase the disparity of the basis of competition between licensees in the area and to grant to Halbert a competitive edge on Sunday.

Thereafter, Halbert perfected his appeal to the District Court which, on the basis of the record made before the Commission, entered its decision on May 21, 1979, affirming the action of the Commission denying Halbert's application.

It appears that there are two issues requiring our consideration. One issue is whether Halbert was sufficiently advised of the issues in advance of the hearing so as to afford him an opportunity to prepare to meet those issues and to produce evidence. The other issue is whether the action of the Commission in denying the license because of its concern about competition was arbitrary and capricious.

Turning to the first issue, we find that our pre-

vious decision in *J K & J, Inc. v. Nebraska Liquor Control Commission,* 194 Neb. 413, 231 N.W.2d 694 (1975), fairly well disposes of the issue in favor of Halbert and against the Commission. In *J K & J, Inc.* at 417, 231 N.W.2d at 697-98, we said:

> The Nebraska Liquor Control Commission is an agency within the provisions of the Administrative Procedures Act. . . . Section 84-913, R. R. S. 1943, provides, among other things, that not only must there be an opportunity for hearing, but the notice shall state the time, place, "and issues involved, but if, by reason of the nature of the proceeding, the issues cannot be fully stated in advance of the hearing or if subsequent amendment of the issues is necessary, they shall be fully stated as soon as practicable. Opportunity shall be afforded all parties to present evidence and argument with respect thereto."

It appears to us that Halbert was at no time advised that the issue of "unfair competition" would be considered by the Commission, even when the matter was remanded by the trial court to the Commission to determine whether it had a policy prohibiting the combining of bottle club licenses and off-sale licenses. The order made no mention that "unfair competition" was to be included in the issues to be decided. It was not until the Commission entered its order on February 14, 1979, that the matter of "unfair competition" was ever mentioned and, to that extent, Halbert was clearly denied the opportunity to meet that issue by presenting evidence. The action of the trial court in affirming the Commission's actions concerning the issue of "unfair competition" was without previous notice that "unfair competition" was an issue.

If the matter of failing to give Halbert sufficient notice of an issue was all that was involved in this case, our holding in *72nd Street Pizza, Inc. v. Ne-*

*braska Liquor Control Commission,* 199 Neb. 729, 261 N.W.2d 614 (1978), might simply direct us to remand the proceedings back to the Commission for further hearings on the issue. We are compelled, however, to go further because of the fact that the remand, in our opinion, cannot produce any reasonable basis for denying the license due to the Commission's concern about competition as raised in this matter. The Commission is vested with the discretion of the granting or denial of liquor licenses, but it may not act arbitrarily or unreasonably. Its discretion is to be exercised reasonably and not whimsically or capriciously. *Joe and Al's IGA, Inc. v. Nebraska Liquor Control Commission,* 203 Neb. 176, 277 N.W.2d 693 (1979). "After an administrative hearing the Nebraska Liquor Control Commission must base its findings and orders on the factual foundation in the record of the proceedings, and the record must show some valid basis on which a finding and order may be premised." *72nd Street Pizza Inc. v. Nebraska Liquor Control Commission* at 738, 261 N.W.2d at 618.

The sole question presented by this matter is whether the Commission may deny a license to one otherwise admittedly qualified, solely on the basis that by granting such license to an individual, the individual may, because of permitted business practices, obtain a particular "competitive edge" over others not afforded the same business options. We can find no basis in the law for permitting the Commission to engage in such determination and thereby to withhold licenses based upon their notion of whether one is receiving an unfair edge not related to the public interests. On that basis, the Commission may very well be permitted to deny a license to an individual who has succeeded in obtaining a favorable lease at a favorable location, thereby granting to him a "competitive edge."

Apparently, the competitive edge which the Commission concerned itself with in this matter, and the

basis upon which it denied the license to Halbert, was the fact that Halbert would be permitted to sell beer off-sale on Sunday, whereas other licensees within the city limits could not. The reasoning relied upon by the Commission in reaching its conclusion is patently fallacious in several respects and results in the Commission's reaching an arbitrary and capricious result.

In the first place, the type of competition with which the Commission is to be concerned must, in some manner, affect the general public. As we noted in *Allen v. Nebraska Liquor Control Commission,* 179 Neb. 767, 140 N.W.2d 413 (1966), the purpose of limiting the number of licenses in a certain community must be related in some manner with furthering the interest of law and order and the well-being of the general public. In the instant case, however, Halbert already had a license to sell beer off-premises on Sunday. Nothing that the Commission did in denying to Halbert a bottle club license affected that situation and Halbert continues today, as he did in the past, to maintain a "competitive edge," if one in fact exists, in connection with the off-sale of beer on Sunday. Denying to Halbert the right to serve not only beer, but also wine and whiskey to his food customers on Sunday will not "equalize" his right to continue selling beer off-sale on Sunday.

Moreover, the record makes it clear that even if Halbert discontinued selling beer off-sale on Sunday, the consumption of off-sale beer in Buffalo County would not very likely be affected and, in fact, the competitive edge would simply be shifted from Halbert to the other two county licensees who now sell beer off-sale on Sunday. How could the license holders within the city limits of Kearney be any better off by having Halbert's competitors sell more beer on Sunday than Halbert? In denying to Halbert a bottle club license the Commission did not, in any

manner, eliminate the public's ability to acquire beer for consumption off-premises on Sunday within Buffalo County.

And finally, the record in this case discloses that the Commission does not have a policy against granting both a bottle club license and an off-sale beer license to the same establishment in that in at least nine other instances it has done so. The Commission's refusal to grant a bottle club license in this case had nothing to do with either Halbert's qualification or the general public's need, but rather was thought to be required because of a restriction imposed upon license holders within the city of Kearney. That restriction, however, was imposed by the city of Kearney and not by either the Commission or state law. If such an inequity exists, the city officials can easily enough remedy the situation. We doubt that such inequity does exist. Certainly, neither the county board nor Halbert's city competitors thought it a problem. They made no protest.

We have frequently said that where the record of the proceedings contains no evidence to justify the order, the action of the Nebraska Liquor Control Commission must be held to be unreasonable and arbitrary. *J K & J, Inc. v. Nebraska Liquor Control Commission, supra; Hadlock v. Nebraska Liquor Control Commission,* 193 Neb. 721, 228 N.W.2d 887 (1975). This record contains no evidence to justify the Commission's action, nor does it indicate how or in what manner any evidence might be offered that would justify denying a license to Halbert because it would grant to him an "unfair edge" over other license holders inside the city of Kearney. That being the case, it becomes clear that the action of the trial court in affirming the order of the Commission must be reversed and an order entered by the trial court granting to Halbert the requested license.

REVERSED AND REMANDED WITH DIRECTIONS.

CLINTON, J., dissents.