Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/22/2019 09:06 AM CDT

Tom Ecker et al., appellants, v.
E & A Consulting Group, Inc.,
et al., appellees.

___ N.W.2d ___

Filed March 22, 2019.    No. S-17-1190.

1. **Summary Judgment: Appeal and Error.** In reviewing the grant of a motion for summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence.

2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

3. **Trial: Waiver: Appeal and Error.** Failure to make a timely objection waives the right to assert prejudicial error on appeal.

4. **Appeal and Error.** When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.

5. **Trial: Waiver: Appeal and Error.** One may not waive an error, gamble on a favorable result, and, upon obtaining an unfavorable result, assert the previously waived error.

6. **Trial: Appeal and Error.** An issue not presented to or decided on by the trial court is not an appropriate issue for consideration on appeal.

7. **Negligence: Damages: Proximate Cause.** In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty.

8. **Negligence: Proximate Cause: Words and Phrases.** The proximate cause of an injury is that which, in a natural and continuous sequence, without any efficient intervening cause, produces the injury, and without which the injury would not have occurred.

Appeal from the District Court for Sarpy County: WILLIAM B. ZASTERA and STEFANIE A. MARTINEZ, Judges. Affirmed.

Michael L. Storey and John M. Walker, of Lamson, Dugan & Murray, L.L.P., for appellants.

Gregory C. Scaglione and John V. Matson, of Koley Jessen, P.C., L.L.O., for appellee E & A Consulting Group, Inc.

Gerald L. Friedrichsen and William M. Bradshaw, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., for appellee City of La Vista.

John A. Svoboda, of Gross & Welch, P.C., L.L.O., for appellee Sanitary Improvement District No. 237.

HEAVICAN, C.J., CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

HEAVICAN, C.J.

## I. INTRODUCTION

Tom Ecker, Ruth Ecker, Jim Sledge, and Rosemary Sledge own homes in La Vista, Nebraska. After those homes were flooded, they brought suit against E & A Consulting Group, Inc. (E&A), Sanitary Improvement District No. 237 (SID No. 237), the City of La Vista (City), and two other parties who have since been dismissed with prejudice from this litigation, alleging that the parties were negligent in various ways, which led to the flood damages suffered. The district court granted summary judgment in favor of E&A, SID No. 237, and the City. The Eckers and Sledges (collectively the homeowners) appeal. We moved this case to our docket, because it presents an issue of first impression regarding revisions to the statute allowing motions for summary judgment as set forth in Neb. Rev. Stat. § 25-1332 (Supp. 2017). We affirm.

## II. BACKGROUND

### 1. Factual Background

The homeowners are neighbors residing in the Cimarron Woods area of La Vista. Their homes are adjacent to each other, feature walkout basements, and have backyards abutting Applewood Creek. The Ecker home has a basement elevation of 1,079.009 feet above sea level, and the Sledge home has a basement elevation of 1,079.808 feet above sea level.

A 2010 drainage study completed by E&A found that several Cimarron Woods homes would flood during a less-than-100-year flood event. As such, E&A recommended that SID No. 237 construct a berm at 100-year flood levels. The parties all concede that the 100-year flood level was 1,081.9 feet above sea level. Plans called for a berm built up to 1,082.5 feet above sea level. A berm intended to meet that recommendation was built in 2011. As relevant to this appeal, the record indicates that the berm had low spots: Adjacent to the Eckers' backyard, the berm was built at 1,081.6 feet above sea level, while adjacent to the Sledges' backyard, the berm was at 1,081.4 feet above sea level.

On June 20 and 21, 2014, a rainstorm in the area generated sufficient water to overcome the berm. The record includes evidence that the total rainfall measured at the Millard Airport, located 3 miles away, was 6.6 inches during an 8-hour period, while the total rainfall measured at the City's public works facility, located 1 mile away, was 7.4 inches during an 8-hour period. The Ecker and Sledge basements both flooded as a result of this storm. The Sledges had 3.5 feet of water in their basement, while the Eckers had 5 feet of water in theirs.

Apparently, other homeowners experienced flooding, but this litigation involves only the Eckers and the Sledges, who filed suit against E&A, BNSF Railway Company (BNSF), and Pedcor Management Corporation. Approximately 1 year later, their suit was amended to join SID No. 237 and the City. Subsequently, E&A, BNSF, SID No. 237, and the City filed

motions for summary judgment. BNSF's motion was denied; the other motions were granted. The homeowners' motion to reconsider was denied. The action against BNSF was dismissed with prejudice; the action against Pedcor Management Corporation was dismissed with prejudice prior to the disposition of the summary judgment motions.

The homeowners appeal.

## 2. Expert Testimony

George Bryan, an expert for the homeowners, testified that E&A, SID No. 237, and the City failed to meet the standard of care to protect against flooding. Bryan further testified that the City should not have allowed construction of the homes and that the drainage did not comply with the "Omaha Regional Stormwater Design Manual," because it was not built for a 100-year storm event. Bryan specifically testified that the maximum flow capacity of the channel running behind the Ecker and Sledge homes was less than the peak flow of a 100-year storm event. Bryan noted that the studies undertaken in preparation for building the drainage channel did not take into account stormwater flow, but only stormwater storage. However, Bryan did agree that the berm was a proper design device to prevent flooding and agreed that the storm in question was in excess of a 100-year storm.

BNSF was still a defendant at the time of the summary judgment hearing and introduced the deposition and reports of its own expert. According to allegations set forth in the motion for summary judgment, the evidence was additionally relied upon by other defendants. BNSF's expert testified that both the size of the storm and the design of the area caused the flooding in question, specifically noting that the City should not have allowed the construction of homes in that area, that the berm was not a prudent protective remedy, that the design studies underestimated the size of a 100-year flood event, and that SID No. 237 did not build the berm to the standards recommended by E&A.

E&A's first expert, Mark Westergard, testified that the flooding was caused by the size of the storm and, perhaps, blockage of the nearby BNSF culvert. Westergard noted that there was no neighborhood data on the storm and that the closest official totals (of 6.6 inches of rain) were gathered at the Millard Airport, located 3 miles away. Westergard observed that the Millard Airport rain total exceeded the Omaha Regional Stormwater Design Manual but not the "Soil Conservation Service" manual, which listed a 100-year storm event at 6.7 inches of rainfall. Finally, Westergard agreed that SID No. 237 did not build the berm to the specifications recommended by E&A. E&A's second expert testified that the storm event could have been anticipated and that the flooding was caused by the magnitude of the storm and culvert blockage.

The City's engineer testified via deposition that he found that the drainage studies complied with the Omaha Regional Stormwater Design Manual and the application subdivision regulations for the City. In a later affidavit, the engineer indicated that contrary to the homeowners' contention, their homes were not built in a designated floodway and thus those regulations did not apply, and that the drainage provided exceeded that required by other regulations.

## III. ASSIGNMENTS OF ERROR

The homeowners assign, restated and consolidated, that the district court erred in granting summary judgment in favor of E&A, SID No. 237, and the City.

## IV. STANDARD OF REVIEW

[1,2] In reviewing the grant of a motion for summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence.[1] Statutory interpretation

---

[1] See *Ewers v. Saunders County*, 298 Neb. 944, 906 N.W.2d 653 (2018).

presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[2]

## V. ANALYSIS

The homeowners assign that the district court erred in granting summary judgment to E&A, SID No. 237, and the City. Specifically, they argue that (1) there were genuine issues of material fact preventing summary judgment in favor of E&A, SID No. 237, and the City; (2) E&A and SID No. 237 failed to file statements of undisputed fact cited to in the record as required by § 25-1332(2) and Rules of Dist. Ct. of Second Jud. Dist. 2-7 (rev. 2018); and (3) E&A and SID No. 237 failed to submit a brief in support of their motion for summary judgment as required by rule 2-7.

### 1. Failure to File Statements
### of Fact and Briefs

The homeowners argue on appeal that E&A and SID No. 237 failed to meet their prima facie burden for summary judgment, because both failed to comply with the requirements set forth in § 25-1332(2). That subsection requires a party to provide citations to the record to support its assertion that a fact cannot be or is genuinely disputed. As an initial matter, E&A and SID No. 237 argue that the homeowners did not object to the failure to cite to the record and thus have waived this argument on appeal. We agree.

[3-6] We have often said that failure to make a timely objection waives the right to assert prejudicial error on appeal.[3] When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted

---

[2] *Salem Grain Co. v. Consolidated Grain & Barge Co.*, 297 Neb. 682, 900 N.W.2d 909 (2017).

[3] *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011).

to it for disposition.[4] One may not waive an error, gamble on a favorable result, and, upon obtaining an unfavorable result, assert the previously waived error.[5] For that reason, an issue not presented to or decided on by the trial court is not an appropriate issue for consideration on appeal.[6]

The homeowners noted at the hearing on the motions for summary judgment that E&A and SID No. 237 did not file briefs with their motion. But they did not make any objection to this failure, or to the failure of E&A and SID No. 237 to cite to the record. As such, we agree that the homeowners waived consideration of this issue on appeal and decline to address this issue on appeal.

While we conclude that the issue was waived, we do observe that district courts generally retain considerable discretion with respect to the procedures used in their courtrooms. And indeed, § 25-1332(3) also provides considerable discretion to the district court in the event that § 25-1332(2) is not complied with. Moreover, we have held that "'[i]n appropriate circumstances where no injustice would result, the district court may exercise its inherent power to waive its own rules.'"[7]

## 2. Summary Judgment

[7] We turn next to a review of the district court's grant of summary judgment. In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty.[8] The legal duty owed in this case was to design and build a drainage solution for a 100-year storm or rain event.

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Kibler v. Kibler*, 287 Neb. 1027, 1031-32, 845 N.W.2d 585, 589 (2014).

[8] *Eadie v. Leise Properties*, 300 Neb. 141, 912 N.W.2d 715 (2018).

(a) Negligence of E&A
and SID No. 237

In their petition, the homeowners alleged that E&A and SID No. 237 owed them a duty to design, engineer, and maintain an effective stormwater management plan and that this duty was breached. On appeal, the homeowners argue that E&A failed to design the berm to an adequate height, that SID No. 237 failed to construct the berm as designed, and that these breaches were the proximate cause of the homeowners' damages. The homeowners also contend that the decision of E&A and SID No. 237 in choosing a berm and constructing a berm, rather than adopting other flood control measures, caused the flooding.

E&A's goal in its various drainage studies was to protect the homes in this subdivision from a 100-year storm event. E&A concluded that to accomplish this, an earthen berm should be built to 1,082.5 feet above sea level. This height exceeded the 100-year storm event elevation of 1,081.9 feet above sea level. This recommendation was based in part on a conclusion on the part of E&A, later proved false, that the BNSF culvert was round and 52 inches in diameter, when in reality, the culvert was elliptically shaped and was 52 inches by 48 inches. In addition, the record shows that the berm had low spots at 1,081.4 and 1,081.6 feet above sea level.

BNSF's expert testified that he felt that usage of the berm as a flood control device was "imprudent" and that he would have recommended the use of a detention/retention system. But the expert agreed in his testimony that had the berm been constructed at a height about 3 inches higher than recommended by E&A, it would have been sufficient. The homeowners' expert testified that due to vegetation in the BNSF culvert that was not properly accounted for, the berm should have been 1 to 1.5 feet higher than its lowest point, or approximately 1,082.9 feet above sea level.

E&A and SID No. 237 had a duty to the homeowners to provide flood protection from a 100-year storm and chose to

provide this protection by constructing a berm. We assume without deciding that E&A breached this duty when it recommended construction of a berm over other flood control measures, and then miscalculated the appropriate height of that berm, and further, that SID No. 237 breached its duty when the berm, as constructed, included several low spots.

[8] But the homeowners are unable to show that these breaches were the proximate cause of the flooding. "The proximate cause of an injury is that which, in a natural and continuous sequence, without any efficient intervening cause, produces the injury, and without which the injury would not have occurred."[9]

The uncontroverted evidence in the record, including the testimony of all the experts, shows that the storm that occurred the evening and early morning hours of June 20 and 21, 2014, exceeded a 100-year storm event. The evidence was also uncontroverted that the water elevation in the drainage basin reached 1,083.7 feet above sea level, or nearly 1 foot above the highest recommended height of the berm. Even if the berm had been built to the specifications which the experts recommended in hindsight, the rain event was still so significant that the homeowners' properties would have flooded. The fact that there was evidence that the flooding might have begun at a point earlier than a 100-year event is immaterial to this conclusion, given that the 100-year event threshold was eventually met. In sum, the storm event was ultimately the cause of the flooding, not any defect in the berm.

Because the uncontroverted evidence showed that regardless of any breach of duty by E&A or SID No. 237, the proximate cause of the homeowners' damages was the magnitude of the storm. As such, the district court did not err in granting E&A and SID No. 237's motions for summary judgment.

---

[9] *Strode v. City of Ashland*, 295 Neb. 44, 68, 886 N.W.2d 293, 310 (2016).

### (b) Negligence of City

The homeowners also assert that the district court erred in granting summary judgment to the City. Specifically, the homeowners contend the City was required to ensure that the E&A drainage studies conformed to the City's regulations, which required a stormwater management plan to handle the minimum of a 100-year storm.

As we concluded above with respect to E&A and SID No. 237, even if the homeowners could show that the City breached its duty, the homeowners cannot show that this breach was the proximate cause of their damage. While the homeowners direct us to varying rainfall totals in the area, all of the experts, including the homeowners' expert, agreed that the storm was in excess of a 100-year event.

We need not address the various arguments that the storm was an "act of God," or could not otherwise have been anticipated, because the only relevant duty at issue was the duty to protect against a 100-year storm, and the storm in this case was undisputedly larger than a 100-year storm. Because the storm exceeded the size of storm for which a duty was owed, the proximate cause of any damage was the storm and not any breach of duty.

The district court did not err in granting summary judgment in favor of E&A, SID No. 237, or the City. There is no merit to the homeowners' arguments on appeal.

### VI. CONCLUSION

The decision of the district court granting summary judgment in favor of E&A, SID No. 237, and the City is affirmed.

Affirmed.

Miller-Lerman, J., not participating.