IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF K.D.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF K.D., ALLEGED TO BE A MENTALLY ILL AND DANGEROUS PERSON.

STATE OF NEBRASKA, APPELLEE,

V.

K.D., APPELLANT.

Filed November 17, 2020.    No. A-20-186.

Appeal from the District Court for Merrick County: RACHEL A. DAUGHERTY, Judge. Affirmed.

Stephen T. Knudsen, of Grafton Law Office, P.C., for appellant.

No appearance for appellee.

PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

K.D. appeals from an order of the district court for Merrick County which affirmed the order of the Mental Health Board of the Fifth Judicial District (the Board) finding that K.D. was a dangerous sex offender and that there was no less restrictive treatment alternative available other than inpatient sex offender treatment. For the reasons that follow, we affirm.

## BACKGROUND

The State filed a petition with the Board alleging that K.D. was a dangerous sex offender within the meaning of Nebraska's Sex Offender Commitment Act, Neb. Rev. Stat. § 71-1201 et seq. (Reissue 2018). On September 30, 2019, the Board held a hearing on the State's petition.

- 1 -

At the hearing, Tyler Newton, a clinical psychologist employed by the Nebraska Department of Correctional Services, testified. Newton testified that he had completed a psychological evaluation of K.D. pursuant to Neb. Rev. Stat. § 83-174.02 (Cum. Supp. 2016). At the time of the evaluation, K.D. was incarcerated following a 2018 conviction for sex offender registration act violation. Newton testified that in May 2018, the Clinical Sex Offender Review Team recommended K.D. be treated through the inpatient Healthy Lives Program for sex offenders (i-HeLP) at the Lincoln Correctional Center. However, K.D. was terminated unsuccessfully from the i-HeLP program after nine months because he assaulted another inmate.

Newton further testified that K.D. had exhibited a general lack of compliance with the i-HeLP program by not completing assignments, not contributing to group therapy, rationalizing behaviors, and not following the treatment plan. Newton also expressed concerns about K.D.'s cognitive fitness due to his diagnosis of dementia, as well as his increased impulsivity and sexual perseveration. Newton testified that K.D. had been prescribed medication to treat his dementia; however, K.D. became resistant to taking the medication, and corrections staff were not equipped to ensure K.D. took his appropriate prescriptions. Newton testified that without proper medication, K.D. exhibited "a continual downslide on his ability to control his impulsivity and aggression," which compromised his progress in sex offender treatment. He testified that K.D. also had a longstanding history of alcohol abuse, which may have contributed to his dementia, and which required additional treatment. At the time of the hearing, Newton was not aware that K.D. had ever participated in residential alcohol treatment.

Regarding K.D.'s criminal history, Newton testified that K.D. had been convicted of multiple sex-related offenses involving minors. These convictions included attempted sexual assault of a child, false imprisonment of a minor, and third degree sexual assault of a 7-year-old. Newton testified that K.D.'s criminal history showed a lack of self-control as well as a high amount of sexual perseveration and impulsivity.

Following the psychological evaluation, Newton diagnosed K.D. with pedophilia, dementia, alcohol use disorder, and cannabis use disorder. Newton's evaluation found that K.D. posed an overall "above average risk" to reoffend, relative to other sexual offenders. Newton testified that based on K.D.'s criminal history, his medical issues, and the high likelihood of reoffending, his opinion was that K.D. was a dangerous sex offender.

Newton testified that inpatient treatment was the least restrictive treatment available to K.D. due to his medical history and cognitive issues. He testified that because K.D. refused to take his medications while incarcerated, it was likely that an involuntary medication order would be required to keep K.D. medication compliant. Without appropriate medication, Newton doubted that K.D. could successfully complete sex offender treatment. For these reasons, Newton stated that in his opinion K.D.'s issues were not something that could be effectively treated in an outpatient setting.

At the hearing, the State offered into evidence certified copies of K.D.'s convictions for third degree sexual assault and for first degree false imprisonment of a minor.

At the conclusion of the hearing, the Board found by clear and convincing evidence that K.D. was a dangerous sex offender based on Newton's testimony and the exhibits received into evidence. The Board further found that the least restrictive treatment available for K.D. was an

inpatient commitment for sex offender treatment with the Nebraska Department of Health and Human Services at the Norfolk Regional Center.

K.D. appealed the Board's order to the district court. He assigned as error that the State failed to (1) prove it had complied with Neb. Rev. Stat. §§ 83-174 and 83-174.01 (Reissue 2014); (2) show K.D. was a dangerous sex offender; and (3) prove that no less restrictive treatment alternatives were available. The district court affirmed the order of the Board. This appeal followed.

## ASSIGNMENTS OF ERROR

K.D. assigns, restated and consolidated, that (1) his due process rights were violated when he was not given notice that he was not subject to a mandatory evaluation and (2) there was insufficient evidence to support a finding that K.D. was a dangerous sex offender and that inpatient sex offender treatment was the least restrictive treatment alternative.

## STANDARD OF REVIEW

The district court reviews the determination of a mental health board de novo on the record. *In re Interest of S.J.*, 283 Neb. 507, 810 N.W.2d 720 (2012). In reviewing a district court's judgment, an appellate court will affirm unless it finds, as a matter of law, that clear and convincing evidence does not support the judgment. *Id.*

## ANALYSIS

*Due Process.*

K.D. argues that his due process rights were violated when the State failed to inform him that he was not subject to a mandatory evaluation pursuant to § 83-174.02. Newton testified that he completed his evaluation of K.D. under § 83-174.02(1)(c), which requires a psychological evaluation to be completed when an individual who was convicted of a sex offense against a minor fails to successfully complete sex offender treatment while incarcerated. On appeal, K.D. argues that the State did not present evidence that K.D. had ever been convicted of a sex offense against a minor. However, K.D. did not make an objection on this basis at the hearing before the Board, nor did he assign this issue on appeal to the district court.

It is well established that failure to make a timely objection waives the right to assert prejudicial error on appeal. *Ecker v. E&A Consulting Group*, 302 Neb. 578, 924 N.W.2d 671 (2019). When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Id.* One may not waive an error, gamble on a favorable result, and, upon obtaining an unfavorable result, assert the previously waived error. *Id.* For that reason, an issue not presented to or decided on by the trial court is not an appropriate issue for consideration on appeal. *Id.*

Here, K.D. raises the issue of due process for the first time on appeal to this court. Therefore, he has failed to preserve the issue for consideration. This argument fails.

*Sufficiency of Evidence.*

K.D. argues that the district court erred in upholding the Board's findings that he was a dangerous sex offender and that inpatient treatment was the least restrictive method of treatment available to him. He asserts that there is insufficient evidence to make either finding by clear and convincing evidence. However, his argument is based on the proposition that Newton's testimony violated K.D.'s due process rights and should not have been considered by the Board. K.D. did not object to Newton's testimony at the hearing. Although K.D. did object to the admission of Newton's psychological evaluation on hearsay grounds, the issue of the evaluation's admission into evidence was not raised on appeal to the district court. Therefore, neither the admission of Newton's testimony nor the Board's receipt of the psychological evaluation of K.D. are properly before this court. See *Ecker v. E&A Consulting Group, supra.*

First, K.D. argues that the State failed to prove by clear and convincing evidence that he is a dangerous sex offender. Section 83-174.01(1) defines "dangerous sex offender" as either (a) a person who suffers from mental illness which makes the person likely to engage in repeat acts of sexual violence, who has been convicted of one or more sex offenses, and who is substantially unable to control his or her criminal behavior, or (b) a person with a personality disorder which makes the person likely to engage in repeat acts of sexual violence, who has been convicted of two or more sex offenses, and who is substantially unable to control his or her criminal behavior. See also *In re Interest of K.W.*, 24 Neb. App. 619, 895 N.W.2d 721 (2017).

The first element the State was required to prove is that K.D. suffered either a mental illness or a personality disorder which makes him likely to engage in repeat acts of sexual violence. See § 83-174.01(1). Nebraska statutes define "mentally ill" as having a psychiatric disorder that involves a severe or substantial impairment of a person's thought processes, sensory input, mood balance, memory, or ability to reason which substantially interferes with such person's ability to meet the ordinary demands of living or interferes with the safety or well-being of others. Neb. Rev. Stat. § 71-907 (Reissue 2018).

At the hearing before the Board, the State introduced evidence that K.D. suffered from multiple mental illnesses. Newton testified that he had diagnosed K.D. with "pedophilia, sexually attracted to females, nonexclusive type;" alcohol use disorder; and cannabis use disorder. Newton stated that pedophilia is a mental illness and that K.D. met the diagnostic criteria found in the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition (DSM-5). Newton testified that K.D.'s mental illness caused him to be impulsive, to lack self-control, and to sexually perseverate, which Newton defined as a tendency to ruminate about the same thoughts over and over with no cognitive flexibility. At the hearing before the Board, K.D. did not present any evidence to contradict Newton's diagnosis. We determine that the State proved by clear and convincing evidence that K.D. suffers from a mental illness.

After proving that K.D. suffered from a mental illness, the State must next prove that K.D. had been convicted of at least one sex offense. See § 83-174.01(1)(a). False imprisonment of a minor in violation of Neb. Rev. Stat. § 28-314 (Reissue 2016) qualifies as a sex offense under Neb. Rev. Stat. § 29-4003(1)(a)(i)(B) (Reissue 2016). At the hearing, Newton testified without objection that K.D. had been convicted of first degree false imprisonment of a minor on May 18, 2004.

Additionally, the State submitted into evidence, with no objection, a certified copy of K.D.'s 2004 conviction for false imprisonment of a minor from the district court for Hall County which substantiated Newton's testimony. Additionally, the State offered a certified copy of K.D.'s conviction for third degree sexual assault in violation of Neb. Rev. Stat. § 28-320(3) (Reissue 2016), which is also a "sex offense" under § 29-4003(a)(i)(C). We determine that the State proved by clear and convincing evidence that K.D. had been convicted of at least one enumerated sex offense.

Finally, in order for a person to be considered a dangerous sex offender, the State must prove by clear and convincing evidence that the person is likely to engage in repeat acts of sexual violence and that he or she is substantially unable to control his or her criminal behavior. *In re Interest of J.R.*, 277 Neb. 362, 762 N.W.2d 305 (2009). At the Board hearing, the State presented evidence that K.D. had three prior convictions involving sexual conduct with minors: attempted first degree sexual assault of a child, false imprisonment of a minor, and third degree sexual assault. Newton's psychological evaluation of K.D. found that he posed an above average risk to reoffend. Newton testified that K.D. had been unsuccessfully discharged from the i-HeLP program and he expressed concerns about K.D.'s impulsivity, sexual perseveration, and apparent lack of self-control. At the hearing, K.D. did not present any evidence, through expert testimony or otherwise, to contradict Newton's conclusion that he was likely to engage in repeat acts of sexual violence or that he was unable to control his criminal behavior. We determine that the State provided clear and convincing evidence that K.D. is a dangerous sex offender under § 83-174.01(1)(a).

In addition to proving that K.D. met the statutory definition of a dangerous sex offender, the State must further prove that neither voluntary hospitalization nor other alternative treatment less restrictive than inpatient treatment would prevent the individual from harming himself or others. *In re Interest of O.S.*, 277 Neb. 577, 763 N.W.2d 723 (2009). At the hearing, Newton testified that K.D. required inpatient treatment due to his dementia and his history of being noncompliant with medications and treatment plans. He stated that K.D.'s needs could not be met in an outpatient setting. No evidence was presented to refute Newton's testimony. We determine that the State satisfied its burden of proving by clear and convincing evidence that there was no less restrictive treatment available than inpatient commitment.

## CONCLUSION

We conclude that the district court did not err in finding clear and convincing evidence to support the Board's determination that K.D. is a dangerous sex offender and there was no less restrictive alternative treatment than inpatient commitment with the Department of Health and Human Services.

AFFIRMED.