IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

RAY V. BEATRICE COMMUNITY HOSP. & HEALTH CTR.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DOUGLAS ALAN RAY, APPELLANT,

V.

BEATRICE COMMUNITY HOSPITAL AND HEALTH CENTER, INC., APPELLEE.

Filed February 8, 2022.    No. A-21-240.

Appeal from the District Court for Gage County: RICKY A. SCHREINER, Judge. Affirmed.

Lyle J. Koenig, of Koenig Law Firm, and James R. Welsh, of Welsh & Welsh, P.C., L.L.O., for appellant.

Mark A. Christensen and Travis W. Tettenborn, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Douglas Alan Ray appeals the Gage County District Court's order granting summary judgment in his professional negligence action against Beatrice Community Hospital and Health Center, Inc. (Hospital). Specifically, Ray alleges that the district court erred in denying his request to introduce the remaining portion of an expert witness deposition into evidence or, alternatively, finding that the common knowledge exception did not apply in the court's determination that no genuine issue of material fact existed. For the reasons herein, we affirm.

- 1 -

COMPLAINT

In May 2019, Ray filed a complaint against the Hospital alleging professional negligence and premises liability. Ray contended, and the Hospital did not dispute, that in November 2017, he was admitted to the Hospital and underwent a total right knee replacement which was performed by Dr. Derek Weichel, a surgeon employed by the Hospital. Following the surgery, Dr. Weichel ordered Ray to complete physical therapy to ensure Ray would be able to navigate stairs as a requirement for discharge. On the morning of his anticipated discharge and prior to his physical therapy session, Hospital nurses assisted Ray out of his bed and into the bathroom. While Ray was using the bathroom, the nurses waited outside the bathroom door. When Ray tried to stand up, he slid and fell into a sitting position. After Ray's fall, Dr. Weichel completed a post-fall assessment and determined that Ray did not sustain any injury as a result of the fall and that Ray could be discharged that day provided that Ray successfully completed the afternoon physical therapy session.

During the afternoon physical therapy session, Kasey Murphy, a physical therapy nurse, directed Ray to perform stair training via a platform step. Ray was to use the platform step in order to demonstrate that he was successfully able to ascend and descend stairs while using a front wheel walker. Murphy utilized a hands-on assist with a gait belt to help guide Ray while he was ascending and descending from the platform step. As Ray attempted to ascend the platform leading with his good leg at Murphy's request, Ray's right leg, which had been operated on, gave out causing Ray to fall and land in a sitting position. Murphy was unable to catch Ray as he fell or hold him up with the gait belt due to Ray's weight which was around 340 pounds. The fall dehisced Ray's surgical wound requiring Ray to undergo a second surgery. During the second surgery, Dr. Weichel performed irrigation and closure of the surgical site. While completing that procedure, Dr. Weichel discovered, and repaired, a tear of the distal quadriceps muscle in Ray's right leg.

In connection with his fall from the platform, Ray alleged that the Hospital breached its duty "to possess and use the care, skill, and knowledge ordinarily possessed and used under like circumstances by other health care providers, physicians, and members of their respective professions engaged in similar practice . . . ," alleged certain particular acts of negligence, and alleged "that as a direct and proximate result of [the Hospital's] negligence and malpractice, [Ray] sustained substantial and permanent injuries and related damages." Ray also alleged that the placement and use of the platform step constituted a hazard to him and that the Hospital was negligent under a premises liability theory of recovery.

THE HOSPITAL'S MOTION FOR SUMMARY JUDGMENT/
RAY'S MOTION FOR EXTENSION

On January 28, 2021, the Hospital filed a motion for summary judgment and scheduled the hearing for February 8. The motion was filed in advance of the court-ordered dispositive motion deadline of February 12 and scheduled jury trial of March 22. Prior to the summary judgment hearing, Ray's counsel requested an extension until March 8 to respond to the Hospital's motion for summary judgment via a motion for extension of time to file a brief opposing the Hospital's motion for summary judgment and evidence in support thereof. The court held a hearing on Ray's

motion for extension of time on February 4. During that hearing, Ray's counsel asserted that co-counsel contracted Covid-19 in January, that this caused his office to get behind, and that he desired more time to respond to the Hospital's motion. In response, the Hospital's counsel argued that Ray's counsel had not complied with the statute requiring that he submit an affidavit showing good cause for a continuance and that Ray's counsel was seeking additional time to find new evidence because Ray's expert witness could not establish causation in her deposition. Ray's counsel stated that the intention was not to seek new evidence, but, rather, obtain additional time to review and refute the Hospital's allegations in connection with their motion for summary judgment. The court denied Ray's motion to continue, stating:

> Well, we can have the hearing [on summary judgment] on February 8th, as scheduled, and I will give you an opportunity to brief that. The summary judgment process is laid out in the court rules. Again, this case has been on file for 465 days. You should have a fantastic grip on the facts of this. You should be able to make that argument why they are not entitled to judgment as a matter of law by now. So we are going to go ahead with the hearing on February 8th. I will address a briefing schedule on that motion at that time.

The hearing on the motion for summary judgment was held as scheduled on February 8, 2021, via WebEx. In support of its motion, the Hospital introduced into evidence an affidavit and curriculum vitae of Dr. Weichel; counsel's affidavit which attached portions of depositions from Ray and Ray's designated expert, Sheryl Deaconson; and the previously filed statement of undisputed material facts. Counsel for the Hospital also requested that the court take judicial notice of the complaint and answer.

Dr. Weichel's affidavit specifically stated that there was no breach in the standard of care by the Hospital's nurses and that no act or omission on the part of the Hospital's nursing staff was the proximate cause of any injury or damage sustained by Ray. Paragraph 3 of Dr. Weichel's opinion stated, in pertinent part:

> g. I performed irrigation and closure of . . . Ray's surgical wound . . . . Ray's surgical wound dehisced when he fell during physical therapy. During the surgery, I discovered a tear of the distal quadriceps muscle in . . . Ray's right leg, which I repaired.

> h. It is my opinion that the injury to . . . Ray's quadriceps muscle was sustained as a result of the fall that occurred during physical therapy in the afternoon of November 22.
> . . . .
> 10. It is my opinion there is no relationship between . . . Ray's "fall" during the morning of November 22 and the fall during the physical therapy during the afternoon of November 22. The physical therapy was being conducted pursuant to and in accordance with my wishes and orders after examining . . . Ray following the morning "fall," and there is nothing the nursing staff could have done to prevent the fall during physical therapy.

In the excerpts submitted from Deaconson's deposition, Deaconson testified that nurses associated with Ray's care negligently failed to take vital signs or conduct neurological checks prior to Ray's fall, failed to notify Ray's family in accordance with "fall policy," and failed to reassess Ray and document the incident in accordance with that same policy. But in relation to all

three opinions, Deaconson failed to ascribe how the alleged acts of negligence caused or contributed to Ray's fall and subsequent injury.

In response to the Hospital's offer, Ray's counsel stated, in part:

We haven't received the total deposition of . . . Deaconson, and in her deposition, which we will consent, in their opinion, the negligence was that they did not put . . . Ray on high-risk precautions after the first fall, and in her opinion, had they put him on high-risk precautions after the first fall, that would have prevented the second fall, and that's where we're coming from, and I think -- I haven't found out yet -- but you have given me some time to respond, and one of the exhibits we will probably offer to you would be . . . some other pages of . . . Deaconson's deposition and maybe some pages of . . . Ray's deposition.

In response, the Hospital's counsel objected to Ray's suggestion of offering future evidence arguing that Ray failed to provide exhibits or a statement of undisputed facts in advance of the summary judgment hearing, and that having not complied with appropriate procedures for the admission of such proposed evidence, Ray was precluded from offering the proposed exhibits on the day of the hearing or thereafter. Hospital's counsel further argued that the Hospital was entitled to summary judgment on the basis of their expert's unrefuted affidavit stating no act of negligence caused damage to Ray.

The district court ultimately refused Ray's offer to admit the entirety of Deaconson's deposition as captured in the following colloquy:

THE COURT: Well, I understand that. But the motion for summary judgment was on file January 28th. You could have got your Statement of Undisputed Facts on file in that week here, ten days, couldn't [you]?

[Ray's Counsel:] I don't think so, Your Honor. Like I said before, we have had some problems with COVID-19 and we are way behind on everything, and I understood you telling us that we would have to have a hearing because of the 465 days since it was filed and you wanted to have a hearing today, but it was my understanding that we were going to be able to submit a brief, and I think with the excerpts from the deposition, . . . Deaconson, that they opened the door to have the full deposition, and I think that is the main thrust of whatever response or resistance we have to this. But I misunderstood you. I apologize.

THE COURT: We had the hearing last Thursday.

[Ray's Counsel:] We have the brief and full deposition.

THE COURT: You wanted to offer evidence today?

[Ray's Counsel:] I would offer the complete deposition of . . . Deaconson. I can send that to you immediately.

THE COURT: Well, we have got the hearing today. I thought you were going to be coming down today and you could have, maybe, brought that with you today, but you have chosen not to appear. We set this up by WebEx at your request.

[Ray's Counsel:] Yes, you did, because of the -- I had talked to someone in your territory down there, and they were going to do things by video because the roads are bad and the -- our roads are bad up here -- and I just felt under the circumstances that we could

have it by WebEx because of me having COVID-19 and so forth and not having the shot yet. That it wasn't a good idea for me or Lyle Koenig to show up because he has COVID-19.

THE COURT: Did you have that . . . last Friday? I guess . . . it's obvious to me you did not want to have this hearing today and you wanted more time to be able to present more evidence.

[Ray's Counsel:] That was my motion, Your Honor.

THE COURT: And I overruled that last Thursday; right? And I asked to have briefs. We addressed the briefing schedule. I think there was probably time for you to get your evidence in the mail, have it marked as an exhibit. I drove down. [Hospital's counsel] drove down. You called us . . . a little after 8:00 o'clock this morning, wanting to set this WebEx hearing. I will accept your brief in two weeks, and we will just go from there.

### PRETRIAL HEARING

On February 22, 2021, prior to the entry of order on the motion for summary judgment, the parties appeared for a pretrial hearing. At the hearing, Ray's counsel again attempted to offer Deaconson's deposition to be considered in opposition to the Hospital's motion for summary judgment. The district court again rejected the offer as untimely.

### COURT ORDER

In early March 2021, the district court granted summary judgment in favor of the Hospital. In doing so, the court stated that the exhibits proffered by the Hospital were received into evidence and that Ray did not offer evidence in opposition to the motion, nor was he granted leave to submit evidence after the hearing concluded. The court found that the Hospital provided Dr. Weichel's affidavit alleging that there was no breach in the standard of care and that Ray's injuries were not proximately caused by the hospital nursing staff. The court also found that excerpts from Deaconson's deposition, which had been offered by the Hospital and received into evidence, affirmatively demonstrated that she did not intend to offer opinions on the issue of causation. The court determined that Dr. Weichel's affidavit was sufficient to make a prima facie case that any act or omission by the Hospital was not the proximate cause of Ray's injuries and that the burden shifted to Ray to show that there was a genuine factual dispute on the issue of causation. The court indicated that Ray introduced no evidence to rebut the Hospital's showing on the issue of causation and that the excerpts from Deaconson's deposition failed to rebut the Hospital's prima facie case.

Further, the court found that since there was no genuine factual dispute as to the liability of any of the Hospital's employees, there was also no dispute regarding the Hospital's liability. The court also rejected Ray's argument that the issue of causation fell within the common knowledge exception not requiring expert testimony on the basis that technical or specialized knowledge was required for a jury to make the causal connection between the negligence of the nursing staff and Ray's fall during the physical therapy exercise. Applying the above-stated principle, the district court found the Hospital was entitled to summary judgment and dismissed Ray's claim.

MOTION TO ALTER OR AMEND

Following the entry of the court's order, Ray filed a motion to alter or amend and supporting affidavit by Ray's counsel which set forth that both he and co-counsel had contracted COVID-19 causing them to be out of the office for 3 weeks; that the court had granted him leave to submit evidence; and that this evidence, in combination with the Hospital's evidence, presented a factual question precluding summary judgment. Ray also alleged that his counsel was permitted to attend the summary judgment hearing via WebEx and that counsel attempted to comply with the summary judgment statute by offering to provide the evidence immediately by email, but the district court erroneously refused to accept the evidence via email in violation of the rule of completeness and in violation of the Uniform District Court Rules permitting courts to grant additional time to file evidence pursuant to a motion for summary judgment. Ray's counsel requested that the court review two exhibits which clearly articulated a factual question: Deaconson's entire deposition and a second affidavit by counsel with attachments related to Deaconson's deposition. The district court denied Ray's motion to alter or amend. Ray has now timely appealed to this court.

ASSIGNMENTS OF ERROR

Ray contends that the district court erred in granting summary judgment in favor of the Hospital because it improperly refused to allow him to submit his statement of disputed facts, index of evidence, and/or Deaconson's complete deposition that could have created an issue of fact, and in finding the common knowledge exception did not apply which, if applied, would have defeated summary judgment on this record.

STANDARD OF REVIEW

An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *In re Estate of Lakin*, 310 Neb. 271, 965 N.W.2d 365 (2021). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

ANALYSIS

Ray first contends that the district court's refusal to receive his proposed statement of undisputed facts, index of evidence, and complete deposition of Deaconson at the summary judgment hearing was an abuse of discretion and resulted in an erroneous summary judgment finding.

We first note that, at the summary judgment hearing, Ray failed to offer a statement of undisputed facts or index of evidence so, as to that aspect of the assigned error, absent plain error, an issue not raised to the district court will not be considered by an appellate court on appeal. "Absent plain error, an issue not raised to the district court will not be considered by an appellate court on appeal." *State v. Kays*, 289 Neb. 260, 268, 854 N.W.2d 783, 790 (2014), *overruled on*

*other grounds, State v. Malone*, 308 Neb. 929, 957 N.W.2d 892 (2021). And it most certainly is not plain error for the district court to not accept documents not offered. That said, the district court refused to admit Deaconson's full deposition due to Ray having failed to comply with rules governing conditions precedent to offering exhibits prior to the summary judgment hearing. The question becomes whether the district court abused its discretion in refusing to accept Deaconson's full deposition under these circumstances. We hold that it did not.

In 2017, the Legislature amended the summary judgment statutes and Neb. Rev. Stat. § 25-1332 (Cum. Supp. 2020) now reads as follows:

> (1) The motion shall be served at least ten days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings and the evidence admitted at the hearing show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. The evidence that may be received on a motion for summary judgment includes depositions, answers to interrogatories, admissions, stipulations, and affidavits. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine dispute as to the amount of damages.
>
> (2) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (a) Citing to particular parts of materials in the record, including depositions, answers to interrogatories, admissions, stipulations, affidavits, or other materials; or
>
> (b) Showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (3) If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by subsection (2) of this section, the court may:
>
> (a) Give an opportunity to properly support or address the fact;
>
> (b) Consider the fact undisputed for purposes of the motion;
>
> (c) Grant summary judgment if the motion and supporting materials, including the facts considered undisputed, show that the movant is entitled to summary judgment; or
>
> (d) Issue any other appropriate order.

In response to this legislative amendment, which now "require[s] a party to provide citations to the record to support its assertion that a fact cannot be or is genuinely disputed," *Ecker v. E & A Consulting Group*, 302 Neb. 578, 583, 924 N.W.2d 671, 676 (2019), the Nebraska Supreme Court adopted Neb. Ct. R. § 6-1526 (rev. 2018). That rule provides specific procedures to carry out the purpose of the amendment to § 25-1332 and provides:

> (A) Moving Party's Materials in Support of Motion. When a motion for summary judgment or partial summary judgment is filed, the moving party must simultaneously file with the clerk and serve on all parties of record:
>
> (1) an Evidence Index in Support listing all evidence to be offered in support of the motion for summary judgment; and

(2) an Annotated Statement of Undisputed Facts setting forth concise, numbered paragraphs reciting each proposed material fact as to which the moving party contends there is no genuine dispute, annotated by pinpoint citation to the supporting evidence in the Evidence Index in Support.

Failure to submit such a Statement may constitute grounds for denial of the motion.

(B) Opposing Party's Materials in Opposition. Each party opposing a motion for summary judgment or partial summary judgment must file with the clerk and serve on all parties of record:

(1) an Evidence Index in Opposition listing all evidence to be offered in opposition to the motion for summary judgment; and

(2) an Annotated Statement of Disputed Facts setting forth concise, numbered paragraphs reciting each proposed material fact of the moving party as to which the opposing party contends there is a genuine dispute, annotated by pinpoint citation to the supporting evidence in the Evidence Index in Opposition.

Failure to submit such a Statement may constitute grounds for sustaining the motion.

(C) For purposes of this rule, where competing motions are filed, a party shall be considered as the moving party regarding a motion or motions asserted by that party and as an opposing party regarding a motion or motions asserted by another party.

(D) The assigned judge is expected to schedule deadlines for compliance with this rule and the summary judgment statutes so as to ensure a fair opportunity for all parties to present their evidence. The judge may, in the judge's discretion, extend any deadline for compliance with any requirement under this rule.

As the Nebraska Supreme Court explained in *Bohling v. Bohling*, 304 Neb. 968, 977-78, 937 N.W.2d 855, 862 (2020):

In order to accomplish the legislative goal of judicial economy, § 6-1526 was crafted for three reasons. First, it benefits parties by making the parties' respective claims as to undisputed or disputed facts clear and precise. Second, it serves both trial and appellate courts by exposing the precise claims of the parties. The parties' briefs are not an effective substitute for an evidence index and an annotated statement of undisputed or disputed facts. A judge should not have to scour through a party's brief to identify factual claims that are intermixed with legal arguments. Third, it was adopted to focus the parties and the court on the specific factual contentions.

Trial courts should have some discretion to adapt procedures to the needs of a particular case, and an appellate court will not intervene except where the discretion is abused. But trial courts should not condone a party's failure to follow § 6-1526 merely because the party finds it inconvenient or unfamiliar. There is a systemic value to the prompt and inexpensive resolution of disputes. Section 6-1526 should not be lightly ignored. We encourage district courts to set deadlines in compliance with the rule and require parties to submit necessary materials.

Here, the Hospital filed its motion for summary judgment on January 28, 2021, and set the hearing on the motion on February 8 in accordance with § 25-1332. In connection with § 6-1526, the Hospital submitted its index of evidence in support of its motion and its annotated statement of undisputed facts. On February 4, Ray attempted to continue the summary judgment hearing but the request was denied, in large measure, because of the length of time the matter had been on file and because a jury trial on the matter was set to begin the following month. Ray does not assign error to that ruling. Instead, he assigns that the district court erred in failing to admit Deaconson's full deposition despite Ray's failure to comply with § 6-1526(B)(1) and (2) in that he failed to file with the clerk and serve on all the parties an evidence index in opposition to the Hospital's motion which listed the evidence to be offered in opposition to the Hospital's motion and an annotated statement of disputed facts reciting each proposed material fact which he contended was genuinely disputed. Under these circumstances, the district court may give an opportunity to properly address the fact, consider the fact undisputed for purposes of the motion, grant summary judgment if the supporting materials show that the movant is so entitled, or issue any other appropriate order. See § 25-1332(3)(a) through (d).

Here, the district court found that the issue of causation propounded by the Hospital's expert was not contradicted by Ray's failure to submit any evidence on the subject due to his failure to comply with the court rule. More specifically, the district court sustained the Hospital's objection to Ray's attempt to propound evidence at the summary judgment hearing that was provided by Ray for the first time on the day of the hearing which resulted in the Hospital's expert testimony being uncontroverted. In *Woodhouse Ford v. Laflan*, 268 Neb. 722, 687 N.W.2d 672 (2004), the Nebraska Supreme court specifically held it was not error for a trial court to enforce § 25-1332(1) by sustaining objections to evidence which was provided by the opposing party for the first time on the day of the summary judgment hearing. Applying the principles set forth in *Bohling* and *Woodhouse Ford*, we hold the district court did not abuse its discretion in refusing to admit Deaconson's entire deposition which was first presented by Ray on the day of the summary judgment hearing.

Ray next argues that, notwithstanding any failure to comply with § 25-1332 and § 6-1526, he was entitled to submit the remainder of Deaconson's deposition at the summary judgment hearing under the rule of completeness set forth in Neb. Rev. Stat. § 27-106 (Reissue 2016). That statute provides:

(1) When part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other. When a letter is read, all other letters on the same subject between the same parties may be given. When a detached act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood, or to explain the same, may also be given in evidence.

(2) The judge may in his discretion either require the party thus introducing part of a total communication to introduce at that time such other parts as ought in fairness to be considered contemporaneously with it, or may permit another party to do so at that time.

Ray specifically argues that "[u]nder the 'rule of completeness,' [he] was entitled to introduce the rest of [Deaconson's] deposition in order to clarify the evidence" which was propounded by the Hospital through portions of Deaconson's deposition. Brief for appellant at 17. But during the summary judgment hearing, Ray failed to assert the "rule of completeness" as a basis upon which he should be entitled to admit Deaconson's entire deposition despite Ray's failure to comply with § 25-1332 and § 6-1526. Instead, during the hearing, Ray argued that the Hospital's offer of portions of Deaconson's deposition "opened the door to have the full deposition [admitted]." But the doctrine of "opening the door" to admission of evidence is different than the rule of completeness. As the Nebraska Supreme court explained in *State v. Carpenter*, 293 Neb. 860, 869, 880 N.W.2d 630, 638 (2016):

> We have described "opening the door" as a rule of expanded relevancy which authorizes admitting evidence which otherwise would have been irrelevant in order to respond to (1) admissible evidence which generates an issue or (2) inadmissible evidence admitted by the court over objection. *Huber v. Rohrig*[, 280 Neb. 868, 791 N.W.2d 590 (2010)]; *Sturzenegger v. Father Flanagan's Boys' Home*[, 276 Neb. 327, 754 N.W.2d 406 (2008)]. Thus, we have used "opening the door" to describe both specific contradiction, i.e., responding to "admissible evidence which generates an issue," and curative admissibility, i.e., responding to "inadmissible evidence admitted by the court over objection." Although we have not referred to the "specific contradiction doctrine" in our discussion of "opening the door," our cases illustrate our acceptance of the concept and we apply it in this case.

Because Ray advances the doctrine of the rule of completeness on appeal, not the doctrine of opening the door which he advanced to the trial court, as we noted before, absent plain error, an issue not raised to the district court will not be considered by an appellate court on appeal. See *State v. Kays*, 289 Neb. 260, 854 N.W.2d 783 (2014), *overruled on other grounds, State v. Malone*, 308 Neb. 929, 957 N.W.2d 892 (2021). Finding no plain error associated with the district court's refusal to admit Deaconson's deposition under the rule of completeness, Ray's argument fails.

Ray finally argues that the district court erred in granting summary judgment in not applying the "common knowledge rule." Ray cites to *Thone v. Regional West Med. Ctr.*, 275 Neb. 238, 250-51, 745 N.W.2d 898, 908 (2008), in stating that "causation may be inferred without expert testimony if the causal link between the defendant's negligence and the plaintiff's injuries is sufficiently obvious to laypersons." To that end, he argues:

> The evidence presented in this case shows that . . . Ray had undergone knee replacement surgery the previous day. On the morning of the fall, . . . Ray had sustained a fall in the bathroom. It is undisputed that . . . Ray weighed 340 pounds. During the physical therapy session at which the second fall occurred, only a single person, the physical therapist, was in attendance. Had two additional persons been present, they could have grabbed . . . Ray's gait belt and prevented him from falling. It does not take an expert to conclude that the absence of additional personnel was a proximate cause of . . . Ray's fall.

(Citations omitted.) Brief for appellant at 19.

"As a general matter [in a medical malpractice action], expert testimony is required to identify the applicable standard of care." *Thone v. Regional West Med. Ctr.*, 275 Neb. at 243, 745 N.W.2d at 903. Further,

> Expert testimony is almost always required to prove proximate causation. Nevertheless, as with the standard of care, the common-knowledge exception applies to proximate causation in professional negligence cases. Thus causation may be inferred without expert testimony if the causal link between the defendant's negligence and the plaintiff's injuries is sufficiently obvious to laypersons. We note, however, that whether a causal link is sufficiently obvious that it may be inferred under the common-knowledge exception is a separate inquiry from whether a defendant's negligence is sufficiently plain that it, too, may be inferred by laypersons.

*Id.*, 275 Neb. at 250-51, 745 N.W.2d at 90. Ray urges that the nurses' alleged misconduct here and Ray's resulting fall is one of those rare cases in which expert testimony was unnecessary to establish the causal link between the nurses' conduct and the resulting fall. We disagree.

As we stated before, the only evidence of negligence on the part of the Hospital's nurses was derived from evidence adduced by the Hospital in the form of excerpts from Deaconson's deposition. In those excerpts, Deaconson generally opined that the Hospital nurses were negligent in failing to take Ray's vital signs and perform neurological checks, failing to notify Ray's family in accordance with "fall policy," and in failing to document the incident. As to these opinions on negligence, even Deaconson indicated she could not issue an opinion on how these alleged negligent acts caused or contributed to Ray's fall. Instead, Deaconson deferred to other medical providers to establish a causal link. Under these circumstances, we find that the link between the alleged negligent acts in this record and the manner in which those negligent acts proximately caused Ray's fall and associated injury is not sufficiently obvious to laypersons and does not fall within the common knowledge exception to the general rule requiring an expert to prove causation. Ray's argument fails.

The Hospital offered expert testimony indicating that any acts or omissions of the Hospital nurses were not the proximate cause of Ray's fall and resulting injury. This evidence shifted the burden to Ray to provide contrary evidence on the issue of proximate causation. "In the medical malpractice context, the element of proximate causation requires proof that the physician's deviation from the standard of care caused or contributed to the injury or damage to the plaintiff." *Thone v. Regional West Med. Ctr.*, 275 Neb. 238, 250, 745 N.W.2d 898, 908 (2008). Ray provided no such evidence at the summary judgment hearing. Accordingly, the district court properly granted the Hospital's motion for summary judgment.

CONCLUSION

For the reasons stated above, we affirm the district court's grant of summary judgment in favor of the Hospital.

AFFIRMED.