Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/04/2022 09:05 AM CDT

Stuart Kozal, doing business as Jumping
Eagle Inn et al., appellants, v.
Andrew W. Snyder and Chaloupka,
Holyoke, Snyder, Chaloupka &
Longoria P.C. L.L.O., appellees.

___ N.W.2d ___

Filed August 12, 2022.    No. S-21-377.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing the grant of a motion for summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence.

3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusion.

4. **Malpractice: Attorney and Client: Negligence: Proof: Proximate Cause: Damages.** To prevail on a claim for legal malpractice, a plaintiff must prove (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the client.

5. **Malpractice: Attorney and Client.** In a legal malpractice action, the required standard of conduct or general rule regarding an attorney's reasonable duty to his or her client is that the attorney, by accepting employment to give legal advice or to render other legal services, impliedly agrees to exercise such skill, diligence, and knowledge as that commonly possessed by attorneys acting in similar circumstances.

6. **Attorney and Client.** To the extent there is an issue as to what the law was and whether the attorney correctly advised on such law is a question

of law for the court. If the court decides that an attorney's conduct or advice did not comport with the substance of the law at the time it was given, then whether the attorney's specific conduct in that particular case fell below what the attorney's specific conduct should have been is a question of fact.

7. **Attorneys at Law: Liability: Appeal and Error.** An attorney is not liable for an error in judgment on a point of law which has not been settled by an appellate court and on which reasonable doubt may be entertained by well-informed lawyers, because an attorney has no duty to accurately predict the future course of unsettled law.

8. **Statutes: Appeal and Error.** An appellate court will not resort to interpretation to ascertain the meaning of statutory words that are plain, direct, and unambiguous.

9. **Statutes: Legislature: Intent.** When a statutory term is reasonably considered ambiguous, a court may examine the legislative history of the act in question to ascertain the intent of the Legislature.

10. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.

11. **Attorney and Client.** Attorneys cannot be placed in the position of having to accept direction from clients on intricate interpretations of the correct or current state of the law. The attorney, not the client, is the individual trained to interpret the law. An attorney should not be required to compromise a reasoned judgment by having to factor into the judgment the client's reasoning on a fine point of law.

12. **Summary Judgment.** In the summary judgment context, a fact is material only if it would affect the outcome of the case.

13. **Malpractice.** Statements or admissions characterized as mistakes or errors do not necessarily mean that a standard of care has been violated.

Appeal from the District Court for Sheridan County: Travis P. O'Gorman, Judge. Affirmed.

Jason M. Bruno, Diana J. Vogt, Robert S. Sherrets, and Thomas G. Schumacher, of Sherrets, Bruno & Vogt, L.L.C., for appellants.

Steven W. Olsen and Amy N. Leininger, of Simmons Olsen Law Firm, P.C., L.L.O., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Heavican, C.J.

## I. INTRODUCTION

Appellants, various liquor stores in Whiteclay, Nebraska, sought to renew multiple liquor licenses in 2017. The cause was eventually appealed to this court, where we determined that because citizen objectors were not named as parties to the appeal from the decision of the Nebraska Liquor Control Commission (NLCC), we did not have jurisdiction to hear the appeal.

Appellants pursued a legal malpractice action against their counsel, appellees. The district court granted appellees' motion for summary judgment, stating that appellees did not breach their duty of care. Appellants appealed the district court's decision. This court granted appellants' petition to bypass the Nebraska Court of Appeals and moved this appeal to our docket. We affirm.

## II. FACTUAL BACKGROUND

Stuart Kozal, doing business as Jumping Eagle Inn; Arrowhead Inn, Inc., doing business as Arrowhead Inn; Jason Schwarting; Clay Brehmer; Daniel Brehmer, doing business as State Line Liquor; Douglas Sanford, Steve Sanford, and Sanford Holdings, L.L.C., doing business as D & S Pioneer Service (collectively appellants), operated convenience and retail stores in Whiteclay. Appellants retained attorney Andrew Snyder (individually Snyder) and the law firm of Chaloupka, Holyoke, Snyder, Chaloupka & Longoria P.C. L.L.O. (collectively appellees), to secure renewal of their liquor licenses for the 2017-18 year.

For the first time in 2017, the NLCC required appellants to submit a long-form renewal application to keep their liquor licenses, rather than allowing the shorthand automatic online renewal that had been previously granted as a matter of course. Appellants filed such applications, and several citizen objectors opposed them.

When the NLCC held a hearing on the renewal applications in 2017, the citizen objectors acted, and were treated,

as parties in the proceedings before the NLCC. Appellees and legal counsel for the citizen objectors were both copied on the NLCC's order denying the liquor license applications.

On April 25, 2017, appellees appealed the NLCC's decision on behalf of appellants in the Lancaster County District Court. Appellees did not name any of the citizen objectors as parties to the appellate proceedings. The Lancaster County District Court thereafter vacated the NLCC's decision, concluding that the NLCC's decision was arbitrary and unreasonable, exceeded NLCC's statutory authority, and was contrary to Nebraska statutes and prior rulings of the Nebraska Supreme Court. The district court ordered the NLCC to honor the renewal of appellants' liquor licenses.

The NLCC and the citizen objectors appealed the district court's decision. In *Kozal v. Nebraska Liquor Control Comm.* (*Kozal I*)[1] this court vacated the district court's decision and dismissed the challenge to the NLCC decision. In *Kozal I*, we determined that this court lacked jurisdiction to hear the appeal because the citizen objectors were not named as parties to the appellate proceedings as required under Nebraska law.

The day our opinion in *Kozal I* was released, Snyder sent an email to appellants informing them of the result, citing his own "error in not including 'all parties' in the appeal," stating that "[o]bviously, this is my fault," and including contact information for his malpractice carrier. On April 5, 2019, appellants filed a legal malpractice action against appellees in the Sheridan County District Court.

On November 14, 2019, appellants filed a motion for partial summary judgment against appellees, contending that no expert testimony was necessary because appellees' malpractice was obvious because Snyder admitted his error in writing. On January 27, 2020, the district court denied appellants' first motion for summary judgment.

---

[1] *Kozal v. Nebraska Liquor Control Comm.*, 297 Neb. 938, 902 N.W.2d 147 (2017).

On November 12, 2020, appellees filed a motion for summary judgment, contending that they did not breach any duty of care to appellants. On January 26, 2021, appellants filed a motion for partial summary judgment, arguing that appellees breached their duty of care by failing to name the citizen objectors as parties to the appellate proceedings and by failing to advise appellants of the consequences of failing to name the citizen objectors if appellees thought the issue was unsettled.

In April 2021, the district court issued an order denying appellants' motion for partial summary judgment and granting appellees' motion for summary judgment. The district court found that it was a question of law whether appellees breached a duty of care in an area of unsettled law and that appellees ultimately did not breach this duty.

Appellants appealed from the district court's order and petitioned this court to bypass the Court of Appeals. We granted appellants' petition to bypass, and this case was thereafter moved to our docket.

### III. ASSIGNMENTS OF ERROR

On appeal, appellants assign that the district court erred in (1) concluding that, as a matter of law, appellees did not breach the applicable standard of care; (2) granting summary judgment to appellees; and (3) denying appellants' motion for partial summary judgment.

### IV. STANDARD OF REVIEW

[1] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[2]

[2] In reviewing the grant of a motion for summary judgment, an appellate court views the evidence in the light most

---

[2] *Guinn v. Murray*, 286 Neb. 584, 837 N.W.2d 805 (2013).

favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence.[3]

[3] When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusion.[4]

## V. ANALYSIS

### 1. Standard of Care

[4] To prevail on a claim for legal malpractice, a plaintiff must prove (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the client.[5] The parties do not dispute that Snyder was a licensed attorney practicing in the State of Nebraska, nor do they dispute that Snyder was hired by appellants to assist in the renewal of their liquor licenses for the 2017-18 year. Thus, we focus on whether Snyder neglected a reasonable duty.

[5] In a legal malpractice action, the required standard of conduct or general rule regarding an attorney's reasonable duty to his or her client is that the attorney, by accepting employment to give legal advice or to render other legal services, impliedly agrees to exercise such skill, diligence, and knowledge as that commonly possessed by attorneys acting in similar circumstances.[6]

### (a) Questions of Law and Questions of Fact

Appellants assign that the district court erred in granting appellees' motion for summary judgment and finding that

---

[3] *Ecker v. E & A Consulting Group*, 302 Neb. 578, 924 N.W.2d 671 (2019).

[4] *State v. Jackson*, 296 Neb. 31, 892 N.W.2d 67 (2017).

[5] See *Young v. Govier & Milone*, 286 Neb. 224, 835 N.W.2d 684 (2013).

[6] See *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999). See, also, *Wolski v. Wandel*, 275 Neb. 266, 746 N.W.2d 143 (2008); *Bellino v. McGrath North*, 274 Neb. 130, 738 N.W.2d 434 (2007).

appellees did not breach the applicable standard of care as a matter of law. Appellants further assert that the district court erroneously engaged in an analysis of both questions of law and questions of fact, ultimately drawing conclusions of fact that it was not authorized to make.

[6] In *Guinn v. Murray*, this court previously clarified what issues in a legal malpractice action are questions of law for the court and what issues are questions of fact for the fact finder.[7] To the extent there is an issue as to what the law was and whether the attorney correctly advised on such law is a question of law for the court.[8] If the court decides that an attorney's conduct or advice did not comport with the substance of the law at the time it was given, then whether the attorney's specific conduct in that particular case fell below what the attorney's specific conduct should have been is a question of fact.[9] Said differently, it is a question of fact whether the attorney's conduct, under the particular circumstances of the case, was such that the attorney exercised the same skill, diligence, and knowledge as that commonly possessed by attorneys acting in similar circumstances.[10]

Accordingly, whether Snyder's conduct or advice was in conformity with the law at the time it was given is a legal question for the court. If Snyder's conduct or advice was not in conformity with the law, then the question of whether such conduct or advice was negligent is a fact issue for the jury. If Snyder's conduct or advice was not erroneous as a matter of law, further analysis regarding the factual determination of whether Snyder's conduct was negligent is unnecessary.

### (b) Unsettled Area of Law

[7] In order to determine whether an attorney's conduct was in conformity with the law, the court may consider whether

---

[7] See *Guinn v. Murray, supra* note 2.

[8] *Id.*

[9] *Id.*

[10] See, *id.*; *Wolski v. Wandel, supra* note 6.

the issue was previously unsettled. In *Wood v. McGrath, North*,[11] we stated that an attorney is not liable for an error in judgment on a point of law which has not been settled by an appellate court and on which reasonable doubt may be entertained by well-informed lawyers, because an attorney has no duty to accurately predict the future course of unsettled law. This immunity rule encourages practicing attorneys in this state to predict, in a professional manner, the outcome of legal issues relevant to their clients' cases.[12] Hence, if the law regarding citizen objectors as parties to an appeal was unsettled in Nebraska or a matter of first impression, then Snyder's judgment on the matter would be immune from suit.

Appellants contend that the district court should have concluded that Snyder was professionally negligent as a matter of law because Snyder admitted he did not name the citizen objectors as parties on appeal, and appellants further contend that the issue of naming citizen objectors was a settled area of law. By contrast, appellees contend, and the district court found, that this was an unsettled, complicated issue of first impression.

A review of the record indicates that the law regarding citizen objectors in this context was indeed unsettled. In *Kozal I*,[13] we noted that the Administrative Procedure Act (APA),[14] specifically § 84-917, requires that a petitioner name all "parties of record" in the agency proceedings as parties to the proceeding for review. Because the APA did not provide guidance for when a nonagency party is a "party of record," we next looked in *Kozal I* to the Nebraska Liquor Control Act (NLCA).[15]

---

[11] *Wood v. McGrath, North*, 256 Neb. 109, 589 N.W.2d 103 (1999).

[12] *Id.*

[13] *Kozal I, supra* note 1.

[14] Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 2014 & Cum. Supp. 2016).

[15] Neb. Rev. Stat. §§ 53-101 to 53-1,122 (Reissue 2010 & Cum. Supp. 2016).

The NLCA, in § 53-1,115, defines which parties qualify as "part[ies] of record" in the NLCC proceedings, but includes limiting language, "[f]or purposes of this section."[16] To determine whether the Legislature intended to specifically limit its definition of parties of record to § 53-1,115(4), we looked to the legislative history surrounding the NLCA and APA.[17]

In *Kozal I*, after reviewing the legislative history surrounding the NLCA and APA, we found that the definition of "party of record" had been enacted in the same bill that amended the NLCA to allow for review through the APA. Further,

> [t]he fact that the Legislature adopted the definition of "party of record" in § 53-1,115(4) . . . in the very same bill in which it adopted APA review of the [NLCC's] orders, leads to the conclusion that the definition in § 53-1,115(4) is the controlling definition of "party of record" for purposes of APA review of the Commission's proceedings.[18]

We thereafter concluded that the citizen objectors were parties of record in the licensure proceeding before the NLCC. Because the citizen objectors were not named as parties on appeal, the retailers had not complied with the requirements for judicial review under the APA, and the district court lacked jurisdiction over the retailers' petition for review. The district court's order was therefore void, and this court lacked jurisdiction over the appeal. We vacated the district court's order and dismissed the appeal.

[8,9] An appellate court will not resort to interpretation to ascertain the meaning of statutory words that are plain, direct, and unambiguous.[19] But when a statutory term is reasonably considered ambiguous, a court may examine the

---

[16] See *Kozal I, supra* note 1.

[17] See *id.*

[18] *Id.* at 948, 902 N.W.2d at 155-56.

[19] *In re Estate of Adelung*, 306 Neb. 646, 947 N.W.2d 269 (2020).

legislative history of the act in question to ascertain the intent of the Legislature.[20] Our decision to include a review of the legislative history, and our use of that history to interpret the meaning of statutory language and to define a party of record, indicates that the law was ambiguous and open to construction.

Until this court rendered a decision in *Kozal I*, the issue of naming citizen objectors on appeal from NLCC decisions was unsettled. At the same time, other attorneys and judges were arriving at similar conclusions on the issue of naming citizen objectors as parties to an appeal,[21] and there were multiple cases decided prior to Snyder's decision in which citizen objectors were not included as necessary parties to an appeal from the NLCC.[22] Consequently, Snyder is not liable for an error in judgment on a point of law which had not been settled by this court and on which reasonable doubt was entertained by well-informed lawyers. Snyder had no duty to accurately predict the future course of unsettled law.

Appellants, in support of their argument that this area of law was settled, cite to *Shaffer v. Nebraska Dept. of Health &*

---

[20] *Scofield v. State*, 276 Neb. 215, 753 N.W.2d 345 (2008). See *Bridgeport Ethanol v. Nebraska Dept. of Rev.*, 284 Neb. 291, 818 N.W.2d 600 (2012).

[21] See, *Candyland, LLC v. Nebraska Liquor Control Comm.*, 306 Neb. 169, 944 N.W.2d 740 (2020); *Retroactive, Inc. v. Nebraska Liquor Control Comm.*, 298 Neb. 936, 906 N.W.2d 328 (2018).

[22] See, *Grand Island Latin Club v. Nebraska Liq. Cont. Comm.*, 251 Neb. 61, 554 N.W.2d 778 (1996); *B & R Stores v. Nebraska Liquor Control Comm.*, 242 Neb. 763, 497 N.W.2d 654 (1993); *Gas 'N Shop v. Nebraska Liquor Control Comm.*, 241 Neb. 898, 492 N.W.2d 7 (1992); *Gas 'N Shop v. Nebraska Liquor Control Comm.*, 229 Neb. 530, 427 N.W.2d 784 (1988); *Harrigfeld v. Nebraska Liquor Control Commission*, 203 Neb. 741, 280 N.W.2d 61 (1979); *Joe and Al's IGA, Inc. v. Nebraska Liquor Control Commission*, 203 Neb. 176, 277 N.W.2d 693 (1979); *City of Lincoln v. Nebraska Liquor Control Comm.*, 9 Neb. App. 390, 612 N.W.2d 252 (2000), *reversed on other grounds* 261 Neb. 783, 626 N.W.2d 518 (2001).

*Human Servs.*[23] In *Shaffer*, this court concluded that an insurance company was a party of record for purposes of the APA where, among other things, it had participated in hearings, was treated as a party, and presented evidence and arguments. Appellants conclude that Snyder therefore should have known that the citizen objectors were parties of record, because like the insurance company in *Shaffer*, the citizen objectors had participated in hearings and were treated as parties. We do not agree.

[10] In *Kozal I*, this court undertook a multistep analysis wherein we concluded that citizen objectors were parties of record for purposes of the APA because citizen objectors are defined by the NLCA as "'part[ies] of record'" in the Commission's liquor license application proceedings *and* because the citizen objectors acted as and were treated as parties in the Commission's hearing.[24] *Shaffer* provided support for the latter portion of the analysis, but did little to resolve the other issues presented where this court questioned the applicability of the NLCA to the APA, and so this court instead referred to legislative history. If *Shaffer* had indeed settled the issue, this court would likely have forgone such detailed legislative review and merely cited to *Shaffer*, as an appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.[25]

While we are required to reach a conclusion independent of the trial court's conclusion on questions of law, we agree with the trial court's interpretation: This was an unsettled, complicated issue of first impression. Thus, even though this court later deemed Snyder's decision to omit the citizen objectors on appeal to be erroneous in *Kozal I*, Snyder's decision was not erroneous as a matter of law at the time it was made.

---

[23] *Shaffer v. Nebraska Dept. of Health & Human Servs.*, 289 Neb. 740, 857 N.W.2d 313 (2014).

[24] *Kozal I, supra* note 1, 297 Neb. at 953, 902 N.W.2d at 158.

[25] *Curry v. Lewis & Clark NRD*, 267 Neb. 857, 678 N.W.2d 95 (2004).

Snyder did not err as a matter of law when he omitted the citizen objectors from the appeal of the NLCC's decision. The district court did not err when it concluded the same.

### (c) Client Consent

Appellants argue in the alternative that even if the issue of naming citizen objectors was an unsettled area of law, Snyder breached the applicable standard of care by failing to advise appellants of his decision to omit the citizen objectors and the risks involved with such decision. Appellees argue that the duty to inform or to discuss unsettled legal issues with a client has only been imposed in the context of settlement negotiations.

Appellants cite *Wood* for the proposition that lawyers generally have a duty to reasonably inform their clients of the issues in their cases and allow their clients to make informed decisions.[26] Accordingly, appellants assert that Snyder's decision to omit the citizen objectors on appeal without first consulting appellants regarding this choice was not protected by the doctrine of judgmental immunity that has been previously applied in the context of unsettled issues of law.

But appellants have omitted key information from the *Wood* opinion which is pertinent to appellees' argument. In *Wood*, we addressed an attorney's negligence in the context of failing to inform a client of unsettled legal issues *pertaining to a settlement*. We discussed our holdings in *Baker v. Fabian, Thielen & Thielen*,[27] where we first established:

> [A]n attorney is not liable for an error in judgment on a point of law which has not been settled by this court and on which reasonable doubt may be entertained by well-informed lawyers. Thus, an attorney's judgment or recommendation on an unsettled point of law is immune

---

[26] *Wood v. McGrath, North, supra* note 11.

[27] *Baker v. Fabian, Thielen & Thielen*, 254 Neb. 697, 578 N.W.2d 446 (1998).

from suit, and the attorney has no duty to accurately predict the future course of unsettled law.[28]

Applying this judgmental immunity rule from *Baker* in the context of settlement negotiations, we stated:

> If we conclude that the judgmental immunity rule applies to an attorney's failure to inform a client of unsettled legal issues *relevant to a settlement*, an attorney could forgo conducting research or providing a client with information on a relevant legal issue once he or she determined that the legal issue at hand was unsettled in this state. We fail to see how this result promotes the settlement of disputes in a client's best interests.[29]

In *Wood*, we were tasked with determining whether to extend the *Baker* judgmental immunity rule to an attorney's failure to inform a client of unsettled legal issues relevant to a settlement agreement. We concluded that the doctrine of judgmental immunity did not apply in this context, but reiterated that our decision imposed no additional duty as a matter of law to research or inform a client on unsettled legal matters, that an attorney's ultimate recommendation in an area of unsettled law is immune from suit, and that such a result gives the client the benefit of both professional advice and the information necessary to make an informed decision whether to settle a dispute.[30]

Contrary to appellants' assertions, *Wood* did not create a general duty of lawyers to inform their clients of procedural or tactical decisions just because the area of law may be unsettled. Appellants have failed to provide any case law that would extend the duty to inform beyond settlement negotiations.

And while the duty to inform has not yet been extended past settlement negotiations in this state, we are aware that

---

[28] *Wood v. McGrath, North, supra* note 11, 256 Neb. at 113, 589 N.W.2d at 106.

[29] *Id.* at 117, 589 N.W.2d at 108 (emphasis supplied).

[30] *Id.*

other jurisdictions considering the same issue are split, with some deciding that judgmental immunity should not apply to an attorney's failure to inform their clients of the nature of the unsettled law. We are also aware that *Wood*, and specifically the cannon cited therein, may tend to imply the same. However, we reiterate that our holding in *Wood* was specifically limited to the settlement context upon contention of the parties that the law firm either did or did not have a duty to inform its client of relevant unsettled issues of law when the law firm had presented its client with a settlement.

[11] Further, we find the arguments in favor of extending judgmental immunity to be persuasive. For example, in considering judgmental immunity and the duty to inform, the Florida Supreme Court stated:

> Attorneys cannot be placed in the position of having to accept direction from clients on intricate interpretations of the correct or current state of the law. The attorney, not the client, is the individual trained to interpret the law. . . . [A]n attorney should not be required to compromise a reasoned judgment by having to factor into the judgment the client's reasoning on a fine point of law.[31]

A California court similarly stated that an attorney who acts in good faith and exercises an honest and informed discretion is not culpable for failing to correctly anticipate the resolution of an unsettled legal principle, additionally commenting that "[t]o require the attorney to further advise a client of the uncertainty in the law would render the exercise of such professional judgment meaningless."[32]

Here, evidence in the record, as well as from our decision in *Kozal I*, shows that the issue of naming citizen objectors as necessary parties on appeal was unsettled. While Snyder's decision to omit citizen objectors on appeal was later deemed

---

[31] *Crosby v. Jones*, 705 So. 2d 1356, 1359 (Fla. 1998).

[32] *Davis v. Damrell*, 119 Cal. App. 3d 883, 889, 174 Cal. Rptr. 257, 261 (1981).

erroneous by this court, it was not erroneous at the time Snyder made the decision. Snyder did not have a duty to inform his clients regarding the unsettled area of law. Snyder's conduct was therefore not erroneous as a matter of law, and this assignment of error is without merit.

### 2. Cross Motions for Summary Judgment

In their second assignment of error, appellants assert that the district court erred in granting appellees' motion for summary judgment.

[12] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law.[33] In the summary judgment context, a fact is material only if it would affect the outcome of the case.[34]

Appellants focus their argument on the testimony of an expert who opined that Snyder breached the standard of care by failing to name the citizen objectors on appeal and by failing to inform appellants that he believed this issue was an unsettled area of law. However, to the extent there is an issue as to what the law was and whether an attorney correctly advised on such law is a question of law for the court rather than a question of fact. The expert's testimony that the law was settled, that Snyder incorrectly advised on that law, and that Snyder had a duty to inform his clients of the law if he believed it was unsettled would not affect the outcome of the case and is immaterial.

[13] Appellants next focus on the email received from Snyder on the day our decision in *Kozal I* was released. In his email, Snyder stated that the appeal was lost and that "[o]bviously, this is my fault." But while Snyder's email to appellants

---

[33] *Guinn v. Murray, supra* note 2.

[34] *O'Brien v. Bellevue Public Schools*, 289 Neb. 637, 856 N.W.2d 731 (2014).

did acknowledge that his actions were the reason the appeal was lost, the email was not an admission that Snyder had breached any applicable standard of care, nor does it create a question of fact. Statements or admissions characterized as mistakes or errors do not necessarily mean that a standard of care has been violated.[35] While Snyder's decision to omit the citizen objectors may be characterized as a mistake, his email admitting to making a mistake does not prove any breach of the standard of care, nor does it impact whether Snyder's conduct was erroneous as a matter of law. Thus, this evidence also does not raise any issues of material fact.

We conclude that appellants' evidence opposing summary judgment was insufficient to create an issue of material fact and that thus, the district court did not err when it granted appellees' motion for summary judgment.

Finally, appellants assign that the district court erred in denying their motion for partial summary judgment. Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.[36] But, as discussed above, Snyder's conduct or advice was not erroneous as a matter of law; hence, appellants are not entitled to judgment as a matter of law.

Despite appellants' assertions that the district court should have granted their motion for partial summary judgment based on the undisputed facts, appellants have failed to prove that they are entitled to judgment as a matter of law. Conversely, Snyder was entitled to judgment as a matter of law. The district court did not err when it granted appellees' motion for

---

[35] See, *Fossett v. Board of Regents*, 258 Neb. 703, 605 N.W.2d 465 (2000) (doctor admitted that leaving fluid in patient's abdomen was mistake; this court found that such statement provided no insight into requisite standard of care for treating patient and did not create reasonable inference of negligence); *Halligan v. Cotton*, 193 Neb. 331, 227 N.W.2d 10 (1975) (doctor's statements proved causation, but did not prove negligence).

[36] *Chambers v. Bringenberg*, 309 Neb. 888, 963 N.W.2d 37 (2021).

summary judgment or when it denied appellants' motion for partial summary judgment.

## VI. CONCLUSION

When Snyder filed the appeal underlying *Kozal I*, in which he did not name the citizen objectors as parties, the issue of naming citizen objectors in appeals from decisions of the NLCC was an unsettled issue of law. Additionally, Snyder did not have a duty to inform his clients regarding the unsettled area of law. We therefore find that the district court did not err when it concluded that, as a matter of law, appellees did not breach the applicable standard of care.

We do not review the district court's decision to deny appellants' motion for partial summary judgment, and we hold that the district court also did not err when it granted appellees' motion for summary judgment.

AFFIRMED.

FREUDENBERG, J., not participating.

PAPIK, J., concurring in part, and in part dissenting.

I concur in the majority's determination that Snyder was entitled to summary judgment on the claim that he was negligent in failing to name the citizen objectors. On this claim, I agree with the majority that the law on whether citizen objectors had to be named was unsettled and that Snyder's decision not to name them was covered by the doctrine of judgmental immunity. I write separately, however, to explain my disagreement with the majority's conclusion that Snyder was entitled to summary judgment on the claim that he was negligent in failing to advise his clients of the risk of omitting the citizen objectors on appeal.

In a legal malpractice action, the required standard of conduct is that the attorney exercise such skill, diligence, and knowledge as that commonly possessed by attorneys acting in similar circumstances. *Guinn v. Murray*, 286 Neb. 584, 837 N.W.2d 805 (2013). The question of what that standard requires of an attorney in a particular case and whether

an attorney met that standard is a question of fact. See *id.* Generally, then, legal malpractice plaintiffs can avoid having their case dismissed as a matter of law and reach a trier of fact if they have expert testimony that lawyers of ordinary skill and capacity would have handled a situation a certain way, but the attorney-defendant failed to meet that standard. See *id.*

We have recognized an exception to this general rule when lawyers take action with respect to unsettled areas of law. In particular, we have held that a legal malpractice plaintiff cannot avoid judgment as a matter of law if the claim is that the lawyer was negligent for an error in judgment on an unsettled legal question, no matter what expert testimony the plaintiff might rely upon. See, e.g., *Baker v. Fabian, Thielen & Thielen*, 254 Neb. 697, 578 N.W.2d 446 (1998). We have referred to this as the "doctrine of judgmental immunity." *Wood v. McGrath, North*, 256 Neb. 109, 113, 589 N.W.2d 103, 105 (1999). Our rationale for adopting the doctrine is that attorneys cannot be expected to accurately predict the future course of unsettled law. See, *id.*; *Baker, supra*. I have no quarrel with the doctrine or with the majority's conclusion that it applies to Snyder's decision not to name the citizen objectors on appeal.

I disagree, however, with the majority's conclusion that the doctrine of judgmental immunity should be extended such that, with the exception of advice regarding settlement offers, a lawyer cannot be liable for failing to advise clients regarding risks posed by unsettled areas of law. In my view, the rationale for the judgmental immunity rule does not neatly fit when it is claimed that a lawyer was negligent for failing to advise clients regarding risks posed by unsettled areas of law. To take this case as an example, Snyder would not have had to predict that this court would determine that failing to name the citizen objectors was a jurisdictional defect that would require dismissal to advise his clients of the risks and benefits of naming or not naming the citizen objectors.

I agree with the majority that our decision in *Wood, supra*, held only that the judgmental immunity doctrine did not cover a failure to advise claim in the context of advice regarding settlement offers. But, on the other hand, much of our reasoning in that case would apply to other contexts as well. We noted, for example, that a lawyer need not accurately predict the future course of the law in order to advise a client regarding unsettled issues in the law. We also reasoned that if the judgmental immunity rule applied to an attorney's failure to inform a client of unsettled legal issues relevant to a settlement, "an attorney could forgo conducting research or providing a client with information on a relevant legal issue once he or she determined that the legal issue at hand was unsettled in this state." *Id.* at 117, 589 N.W.2d at 108. It strikes me that today's decision appears to immunize lawyers from potential liability if they take that very course in an area that does not involve providing advice on a settlement offer.

To be fair, our decision in *Wood* also relied on a provision of the then-governing professional responsibility rules for attorneys, providing that the decision to settle a case belongs to the client. But other provisions of our current rules of professional conduct recognize an attorney's general duty to keep a client informed so the client can make decisions during the representation. These rules provide that an attorney shall "reasonably consult with the client about the means by which the client's objectives are to be accomplished," Neb. Ct. R. of Prof. Cond. § 3-501.4(a)(2); "keep the client reasonably informed about the status of the matter," § 3-501.4(a)(3); and "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation," § 3-501.4(b). A comment to this rule adds:

> The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so. Adequacy of communication depends in part

on the kind of advice or assistance that is involved. For example, when there is time to explain a proposal made in a negotiation, the lawyer should review all important provisions with the client before proceeding to an agreement. In litigation, a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that are likely to result in significant expense or to injure or coerce others. On the other hand, a lawyer ordinarily will not be expected to describe trial or negotiation strategy in detail. The guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interests, and the client's overall requirements as to the character of representation.

§ 3-501.4, comment 5.

I also note that I am not persuaded by the majority's reliance on two cases from other jurisdictions. As an initial matter, it is not clear to me that those cases extend the doctrine of judgmental immunity as far as the majority does here. Starting with the Florida Supreme Court's opinion in *Crosby v. Jones*, 705 So. 2d 1356, 1359 (Fla. 1998), that opinion expressly disavowed holding that "an attorney should never be required to inform a client regarding a conflict in the law." Instead, the court held that the lawyer did not have a duty to consult with his clients when the existing precedents of the court in which the underlying case was pending supported the lawyer's decision. As we explained in *Wood v. McGrath, North*, 256 Neb. 109, 116, 589 N.W.2d 103, 107 (1999), *Crosby* was thus a case of not "*unsettled* law," but "*apparently settled* law." (Emphasis in original.) I agree that a lawyer should be immune from a suit when it is alleged that he or she failed to consult with a client about apparently settled law. But in this case, there is no suggestion that at the time Snyder filed the appeal, the law was apparently settled that citizen objectors need not be named.

The other case relied on by the majority, *Davis v. Damrell*, 119 Cal. App. 3d 883, 174 Cal. Rptr. 257 (1981), also may have presented a situation in which a court was reluctant to allow for liability for the failure to predict a change in the law. Although the court refers to the law at issue as unsettled, it also states that the lawyer could not be held liable for failing to anticipate a "180 degree shift in the law." *Id.* at 888, 174 Cal. Rptr. at 260 (internal quotation marks omitted).

Both *Crosby* and *Davis* do have broader language, quoted by the majority, concluding that it would be an intrusion on lawyers' professional judgment if there is a possibility that lawyers can be held liable for not advising their clients regarding risks associated with unsettled issues of law. I am not convinced. As I see it, advising a client regarding legal risks is part and parcel of attorneys' professional judgment. I also note that to the extent *Crosby* and *Davis* are read to apply the doctrine of judgmental immunity to any case in which it is alleged that a lawyer failed to advise a client regarding unsettled issues of law, several other courts have not followed that approach. See, e.g., *Williams v. Ely*, 423 Mass. 467, 668 N.E.2d 799 (1996); *Chatham Orthopaedic Surgery Center v. White*, 283 Ga. App. 10, 640 S.E.2d 633 (2006); *First Nat. Bank of Clovis v. Diane, Inc.*, 102 N.M. 548, 698 P.2d 5 (N.M. App. 1985); *Bowman v. Gruel Mills Nyms & Pylman, LLP*, 2007 WL 1203580 (W.D. Mich. Apr. 24, 2007).

Because I would not apply the doctrine of judgmental immunity to the failure to advise claims, I would treat such claims as subject to ordinary legal malpractice standards. In other words, I would treat the questions of whether the standard of care required a lawyer to advise a client of risks posed by unsettled areas and whether the lawyer met that standard as questions of fact. And because the appellants offered an expert affidavit that the standard of care required such advice here, I would not affirm the entry of summary judgment on that claim. That outcome would not ensure victory for appellants. Rather, it would require a trial where Snyder could offer evidence that this was

not an issue on which lawyers of ordinary skill would have advised their client or that, given his relationship with appellants, this was not an issue on which his clients would have reasonably expected to be so advised.

Much of lawyering, it seems to me, involves identifying risks and advising clients of potential consequences so that clients can make informed choices. If a lawyer fails to advise a client of a risk when other lawyers in the community would normally provide such advice and the client can prove resulting damages, I do not think the judgmental immunity doctrine should close the courthouse doors to that client, merely because the risk involved an unsettled issue of law. For that reason, I respectfully dissent.

MILLER-LERMAN, J., joins in this concurrence and dissent.