IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

SPIEHS V. CITY OF GRAND ISLAND

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TIM AND LISA SPIEHS, APPELLANTS,

V.

CITY OF GRAND ISLAND, NEBRASKA, APPELLEE.

Filed January 24, 2023.   No. A-22-289.

Appeal from the District Court for Hall County: ANDREW C. BUTLER, Judge. Affirmed.

Galen E. Stehlik, of Stehlik Law Firm, P.C., L.L.O., for appellants.

Dan H. Ketcham and Samuel A. Huckle, of Engles, Ketcham, Olson & Keith, P.C., for appellee.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

### INTRODUCTION

Tim and Lisa Spiehs filed a negligence action against the city of Grand Island, Nebraska (the city). The Spiehses claim that their property was damaged by the city's nearby excavation project. The district court of Hall County granted the city's motion for summary judgment on the basis that any damage incurred by the Spiehses was the responsibility of the independent contractors hired by the city to complete the project. We affirm.

### STATEMENT OF FACTS

On December 29, 2017, the Spiehses filed a complaint against the city under the Political Subdivisions Tort Claims Act, alleging that they owned property adjacent to land on which the city conducted an excavation project. The Spiehses claimed that while the city "and its agents" were engaging in "earth moving activities," the activities resulted in damage to the Spiehses'

- 1 -

property; including that their septic system was destroyed, their property floods and does not properly drain, their yard was damaged by the city's equipment, and a building on their property required repair and repainting after being hit by the city's machinery. The Spiehses also claim that vibrations from the city's equipment caused structural damage to their home and garage. Because of this alleged damage, the Spiehses had to pump their septic tank twice weekly, replace removed dirt and damaged sod, and add a concrete drainage system to prevent water from flooding their property.

Additionally, the Spiehses claimed that representatives of the city had assured the Spiehses that, in exchange for a temporary easement onto their property, the city would "add a tap at the manhole" located on city property adjacent to the Spiehses. However, despite repeated demands by the Spiehses, the city had refused to add a tap at that manhole.

The Spiehses requested a judgment against the city for $91,260.91 in damages, an order requiring the city to waive the "tap fee" of $7,500, and an order releasing all easements granted by the Spiehses to the city related to the excavation project.

On February 2, 2018, the city filed an answer to the Spiehses' complaint, noting that the complaint was untimely and violated the statute of limitations prescribed in the Political Subdivisions Tort Claims Act. The city requested that the complaint be dismissed, as the Spiehses had failed to state a claim upon which relief could be granted. On September 28, the city filed a motion for summary judgment.

An order filed by the district court on December 19, 2018, indicates that a hearing on the city's motion for summary judgment was held on November 1. A bill of exceptions from this hearing is not included in our record. The court summarized a timeline of the Spiehses' allegations, including that the city began the excavation project in July 2014 and that work on the project continued to damage their property through the spring of 2016. The court found that the Spiehses' claim was not barred by the applicable statute of limitations because it was subject to the continuing tort doctrine due to the cumulative pattern of the city's alleged conduct. The court also concluded that there existed a genuine issue of material fact as to when the city's alleged tortious conduct ended and when the Spiehses' claim accrued, and so denied the city's motion for summary judgment.

On November 18, 2021, the city filed another motion for summary judgment, claiming that all of the alleged acts of negligence and their resulting damages were caused by nonparty independent contractors. Further, the city alleged that it did not perform any of the work which the Spiehses claimed damaged their property.

A hearing on the city's second motion for summary judgment was held on January 20, 2022. The city offered five exhibits, including a 2014 agreement between the city and independent contractor S.J. Louis Construction, Inc. (S.J. Louis) for work on the excavation project; a 2014 subdivision agreement between the Spiehses, their neighbors, and the city; a 2014 deed of temporary easement granted by the Spiehses to the city; an affidavit of the city's public works director; and a deposition of Tim Spiehs. The Spiehses did not object and the district court received the exhibits. The city also asked the court to take judicial notice of all pleadings in the case, which the court did. Additionally, the city provided the court and the Spiehses with an undisputed statement of facts and an evidence index and stated that both items would be filed later. The Spiehses indicated that they had received the city's evidence index prior to the hearing.

When asked by the court if they had any evidence, the Spiehses stated that "all we would do is offer the deposition of Tim Spiehs, which has already been received as Exhibit No. 9." We note that exhibit 9 included its own evidence index on the third page of the deposition, which listed 13 additional exhibits. However, none of these 13 exhibits were attached to the deposition or were offered by either party at the second summary judgment hearing.

Both parties presented brief arguments regarding whether S.J. Louis was an independent contractor or an agent of the city. The Spiehses indicated that they would provide further briefing to the district court and the court took the matter under advisement.

On March 22, 2022, the city's statement of undisputed facts and evidence index was filed. The evidence index listed the same five exhibits which had been offered by the city at the second summary judgment hearing.

That same day, the district court entered a detailed order granting the city's second motion for summary judgment. The court noted that the Spiehses did not file a statement of disputed facts or an evidence index, and the court accepted the city's statement of undisputed facts as true. According to the city's statement, the city itself did not perform any construction work in connection with the excavation project at issue. Rather, S.J. Louis was contracted by the city to furnish all superintendence for the project and to provide all supplies and materials necessary for completion of the project.

Because the Spiehses did not submit disputed facts or evidence to oppose the city's motion, the district court concluded that there was no genuine issue of material fact as to S.J. Louis' status as an independent contractor for the city. Thus, the city was not liable for any alleged negligence by its contractor and was entitled to judgment as a matter of law. The court dismissed the Spiehses' complaint with prejudice.

The Spiehses appeal.

## ASSIGNMENTS OF ERROR

The Spiehses assign, reordered, that the district court erred in (1) failing to note that exhibit 9, the deposition of Tim Spiehs, did not contain the 13 additional exhibits listed in its index; and (2) granting the city's motion for summary judgment.

## STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Kozal v. Snyder*, 312 Neb. 208, 978 N.W.2d 174 (2022).

In reviewing the grant of a motion for summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

## ANALYSIS

*Exhibits Listed in Deposition's Index.*

The Spiehses argue that the district court erred by granting the city's motion for summary judgment without "even reading, or even considering 262 pages of exhibits which should have

been a part of the Deposition of Tim Spiehs. . ." Brief for appellant at 6. They also contend that the additional exhibits referenced in the evidence index of Tim Spiehs' deposition, were offered and received along with the deposition as exhibit 9. The Spiehses allege that the city misrepresented the contents of exhibit 9 to the district court and deprived the Spiehses of their opportunity to object.

In connection with a motion for summary judgment, the proponent of evidence must mark and offer the exhibits into evidence. *Hogan v. Garden County*, 264 Neb. 115, 646 N.W.2d 257 (2002). Unless the evidence is marked, offered, and accepted, it does not become part of the record and cannot be considered by the trial court as evidence in the case. See *id*.

The Spiehses cite no case law or court rules for the proposition that it is the duty of the district court to remedy alleged defects in exhibits, or to supplement the bill of exceptions with exhibits allegedly missing from the record. The record reflects that at the second hearing for summary judgment, exhibit 9 was marked and offered by the city and accepted by the district court without objection. The district court's order indicates that the court considered exhibit 9, which included only the deposition of Tim Spiehs and none of the additional exhibits listed in the deposition's evidence index. The district court had no obligation to consider exhibits not marked and offered into evidence. *Hogan v. Garden County, supra*. Thus, district court did not err by considering the version of a particular exhibit which was properly before the court.

We also disagree with the Spiehses' argument that the city engaged in misrepresentation and denied them of their right to object to exhibit 9. The record clearly reflects that at the second summary judgment hearing, the city presented hard copies of its five exhibits to be marked and offered. Presumably, the Spiehses had the opportunity to inspect exhibit 9 and object to the exhibit or ask for leave to submit the exhibits listed in the deposition's evidence index.

Additionally, the city's evidence index listed exhibits which also appeared in the deposition's evidence index, including the subdivision agreement and the deed of temporary easement. At the hearing, the Spiehses noted that they had received the city's evidence index in advance and therefore, could have noticed the redundancy of the city offering separate exhibits which the Spiehses believed to be attached to exhibit 9.

Because the Spiehses were afforded an opportunity to inspect and object to exhibit 9, this assignment of error fails.

*Motion for Summary Judgment.*

The Spiehses assert that there exists a genuine dispute of material fact concerning the city's direct involvement in the excavation project, and that therefore, summary judgment was not appropriate.

Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Humphrey v. Smith*, 311 Neb. 632, 974 N.W.2d 293 (2022).

Before we consider whether the city's motion for summary judgment should have been granted by the district court, we must first consider the implications of the Spiehses' failure to file an evidence index and an annotated statement of disputed facts, as required by Neb. Ct. R. § 6-1526 (rev. 2018). This rule sets forth the procedure for summary judgment. It requires a party moving

for summary judgment to file an "Evidence Index" listing all evidence to be offered in support of a motion for summary judgment, along with an "Annotated Statement of Undisputed Facts." A party opposing a motion for summary judgment must file an "Evidence Index in Opposition" listing all evidence to be offered in opposition to the motion for summary judgment, along with an "Annotated Statement of Disputed Facts." The rule provides that failure to submit such a statement may constitute grounds for sustaining the motion. Finally, the rule provides that the documents required by this rule shall not be included within a brief submitted on behalf of a party.

The Nebraska Supreme Court has recently identified three reasons for § 6-1526, namely, to benefit the parties by making their claims as to disputed and undisputed facts clear and precise, to serve the courts by exposing the precise claims of the parties, and to focus the parties and the court on the specific factual contentions. See *Bohling v. Bohling*, 304 Neb. 968, 937 N.W.2d 855 (2020). However, in the context of § 6-1526, trial courts are allowed discretion to adapt procedures to the needs of a particular case, and an appellate court will not intervene except where the discretion is abused. *Id.*

In its order granting the city's second motion for summary judgment, the district court found that the city's statement of undisputed facts was admitted as true due to the Spiehses' failure to comply with § 6-1526. Additionally, the court noted that the Spiehses cited to exhibits not received by the district court in their brief in opposition to the second motion for summary judgment. Because the Spiehses failed to submit an evidence index or an annotation of disputed facts required by § 6-1526, we find that the district court did not abuse its discretion by considering the city's statement of facts as undisputed.

Turning to the appropriateness of granting summary judgment, we briefly outline the applicable legal framework. To prevail in any negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and resulting damages. *Porter v. Knife River, Inc.*, 310 Neb. 946, 970 N.W.2d 104 (2022). Generally, one who employs an independent contractor is not liable for the negligence of the contractor or its servants. See *Sparks v. M&D Trucking*, 301 Neb. 977, 921 N.W.2d 110 (2018). One acting on behalf of another may do so as an agent or an independent contractor. The factors to be considered in distinguishing between the two are: (1) the extent of control which, by the agreement, the potential employer may exercise over the details of the work; (2) whether the one potentially employed is engaged in a distinct occupation or business; (3) the type of occupation, with reference to whether, in the locality, the work is usually done under the direction of the potential employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the potential employer or the one potentially employed supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the one potentially employed is engaged; (7) the method of payment, whether by the time or by the job; (8) whether the work is part of the regular business of the potential employer; (9) whether the parties believe they are creating an agency relationship; and (10) whether the potential employer is or is not in business. *Id.* The extent of control is the chief factor distinguishing an employment relationship from that of an independent contractor. *Id.*

According to the city's statement of undisputed facts, the city did not perform any construction work in connection with the excavation project, rather the city contracted with S.J. Louis to furnish all superintendence for the project. The city did not have any representatives go

- 5 -

to the Spiehses' property to supervise or dictate the manner in which S.J. Louis performed their work for the project. Additionally, the city did not purchase or provide any materials or equipment used by S.J. Louis for the project. The affidavit of the city's public works director reaffirms these facts. Further, the agreement entered into by the city and S.J. Louis was pursuant to bids for specific elements of the project and not for an indefinite period of time.

The city's statement of undisputed facts and offered evidence establishes that S.J. Louis was an independent contractor for the city. The city had minimal control over S.J. Louis' work on the project, as S.J. Louis supplied the instrumentalities and tools necessary to complete the project; the city did not directly supervise or dictate the details of the work; and S.J. Louis was contracted only to accomplish specific tasks. It is clear by the language of the city's agreement with S.J. Louis that the parties did not believe they were creating an agency relationship. See *Fitzpatrick v. U S West, Inc.*, 246 Neb. 225, 518 N.W.2d 107 (1994).

Generally, one who employs an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or his servants. There are two recognized exceptions to the general rule pursuant to which the employer of an independent contractor may be vicariously liable to a third party. Those two exceptions are where (1) the employer retains control over the contractor's work or (2) the employer has a nondelegable duty to protect another from harm. *Didier v. Ash Grove Cement Co.*, 272 Neb. 28, 718 N.W.2d 484 (2006).

We find neither exception applies to the city in this case. Related to the first exception, as discussed above, the record demonstrates that representatives of the city did not supervise S.J. Louis, go to the premises of the excavation project's site, or otherwise dictate the details of the project. Related to the second exception, the Spiehses' claims do not allege that the city violated a duty imposed by statute or that the alleged activities which caused damage to their property involved special risks. See *id*. (stating that nondelegable duties include (1) the duty of an owner in possession and control of premises to provide a safe place for work by a contractor's employee, (2) a duty imposed by statute or rule of law, and (3) the duty of due care imposed on an employer of an independent contractor when the contractor's work involves special risks or dangers). Because neither exception is applicable here, the city is not vicariously liable for any alleged damage caused by S.J. Louis.

For the above reasons, there exists no genuine issue of material fact that S.J. Louis was an independent contractor for the city, and that the city is not liable for any alleged negligence committed by S.J. Louis. Therefore, the district court correctly determined that the city was entitled to judgment as a matter of law on the Spiehses' claims that the city's excavation activities resulted in damage to their property.

The district court also granted summary judgment as to the "unspecified cause of action" in which the Spiehses' alleged that the city assured them it would "add a tap at the manhole" located on adjacent city property in exchange for a temporary easement onto the Spiehses' property, but failed to do so. The court found that the undisputed facts demonstrated no evidence of any damages as a result of this alleged activity. We agree.

The 2014 subdivision agreement between the Spiehses, their neighbors, and the city, states that a public sanitary sewer is not available to the subdivision, and that the Spiehses and their neighbors waive their right to protest the creation of a sanitary sewer district within or abutting the

subdivision. In Spiehs' 2021 deposition, he testified that he no longer wanted to hook up to the city's sewer system. Additionally, a fence on a neighbor's property prevented the Spiehses from hooking up to the city's sewer. Spiehs conceded in his testimony that S.J. Louis constructed the fence and that he never asked the neighbors for permission to cross the fence in order to connect to the sewer system.

There exists no genuine issue of material fact that the Spiehses are not entitled to a public sanitary sewer, and that any alleged damages by virtue of an inability to hook up to the city's sewer resulted from the fence on the neighbor's property which was constructed by S.J. Louis. The city was entitled to judgment as a matter of law as to this claim and the district court did not err in so finding.

## CONCLUSION

The district court did not err by failing to consider the exhibits listed in the evidence index of Tim Spiehs' deposition. Such exhibits were not included in exhibit 9 as it was marked and offered to the district court, and thus were not properly before the court. Additionally, there are no genuine issues of material fact as to any of the Spiehses' claims against the city and the district court did not err in granting its motion for summary judgment.

AFFIRMED.